reference has been made, and that, for that reason, he did not acquire jurisdiction of the defendant, and the judgment of conviction should be reversed.

Judgment of the county court and of the police court reversed, and the defendant discharged.    All concur.

(13 App. Div. 120.)

## SCHMITT v. METROPOLITAN LIFE INS. CO.

(Supreme Court, Appellate Division, Second Department.  January 29, 1897.)

1. CONTRIBUTORY NEGLIGENCE—FINDING BY JURY.
   Contributory negligence of decedent, who was killed by a descending elevator, while he was repairing the elevator shaft in defendant's building, is a question for the jury, where it appears that the elevator ran frequently, but irregularly, and that it was customary for the elevator man to call out when approaching points where men were working, and there is evidence that decedent knew that the relief man, who ran the elevator at certain hours, who was running it when decedent was killed, never gave warning, and that no warning was given of its descent.

2. DEATH BY WRONGFUL ACT—EXCESSIVE DAMAGES.
   A verdict for $25,000 is excessive where decedent, a steel and iron worker, was 29 years old when killed, was in good health, and earning, as foreman, $3.50 a day, and had regular employment.

Appeal from trial term, Kings county.

Action by Elizabeth R. Schmitt, as administratrix of the estate of Frederick Schmitt, deceased, against the Metropolitan Life Insurance Company, for death by wrongful act.  From a judgment in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals.  Reversed, unless plaintiff remit damages.

Plaintiff's intestate was 29 years old at the time of his death.  He was, and always had been, in good health.  He had been employed by the Jackson Architectural Iron Company for 10 years.  During that period his salary had been from time to time advanced from $2.50 to $3.50 per day, which latter sum he was receiving at the time of his death.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

C. N. Bovee, Jr., for appellant.
John C. Robinson, for respondent.

WILLARD BARTLETT, J.    In the early part of the year 1896, a corporation known as the Jackson Architectural Iron Works entered into a contract with the defendant to do certain work in the reconstruction of a number of elevator shafts in the Metropolitan Life Insurance Company's Building, on the corner of Madison avenue and Twenty-Third street, in the city of New York,  As to one of these elevators, which was designated as "No. 2," the agreement provided that it should continue to be used while the work was going on upon the shaft through which it ran.  The plaintiff's husband, Frederick Schmitt, was the foreman of the gang of men employed by the Jack-

son Architectural Iron Works to fulfill the contract on their part. He began work on the shaft of elevator No. 2 on February 13, 1896, and he was killed five days later, on the afternoon of the 18th, by the descending elevator, which struck him as he was standing on a scaffold in front of the shaft, and leaning over into the opening, to test the security of some fastenings there. It appeared that, during all the time that Schmitt had been at work about the shaft, the elevator had been run frequently, but irregularly, by an employé of the insurance company, named Smith, whose habit it was to warn the employés of the Jackson Architectural Iron Works as he approached them, in going up or coming down, by calling out, "Look out above!" or "Look out below!" as the case might be. This man Smith, however, was relieved for a short time every day, between 11 and 12 in the forenoon, and at about 4 o'clock in the afternoon, by another employé of the defendant, named Christopher, who testified that he never gave any cautionary signals in the operation of the elevator. He also stated that Schmitt, the deceased, had made trips with him once in a while, and that he did not give any signal in going up and down on any of these trips. The plaintiff recovered a verdict of $25,000 damages at the trial term. On the present appeal there is no contention that there was not sufficient evidence to warrant the jury in finding that the defendant was negligent in operating the elevator so as to cause the death of the plaintiff's intestate under the circumstances which have been stated, but it is earnestly insisted that the deceased was guilty of contributory negligence, and that, in any event, the verdict was extremely excessive.

The imputation of contributory negligence to the plaintiff's husband is based upon the evidence to which reference has been made, in regard to the manner in which the elevator was operated by Christopher, when he relieved the other elevator man, and upon the proof indicating that the deceased had knowledge of the fact that Christopher was in the habit of omitting the usual warnings to the men at work about the shaft. While the testimony on this branch of the case was such as would have sustained a finding by the jury that the deceased was at fault, and contributed to the accident by his own neglect, it does not seem to us that the evidence necessarily required them to adopt this view. The proof as to Christopher's custom to omit the usual signals, and as to Schmitt's knowledge of that custom, proceeded solely from Christopher himself, who was in the employment of the defendant. This witness was not so disinterested as to require the jury to accept his statements as true. The jury were at liberty to discredit all that he said on this subject; and if his testimony was thus disregarded, as may well have happened, there would be nothing left upon which to base a finding of contributory negligence. The facts would then bring the case within the rule laid down in Anderson v. Mill Co., 42 Minn. 424, 44 N. W. 315. There the plaintiff was a workman in the defendant's sawmill, near a chute, down which heavy timbers were impelled at irregular intervals and in rapid succession. In order that the plaintiff and the other men employed with him might have warning of the approach of these timbers, and avoid danger, the mill company had

adopted the precaution of having a signal given whenever a timber was sent down the slide. The plaintiff was injured by a heavy timber, which came down with great velocity, and struck him, without any warning of its approach having been given. The supreme court of Minnesota, in affirming an order refusing a new trial to the defendant, said:

"The duty, in the abstract, of the appellant to give warning, by signal, of the coming of timbers through the slide, is not involved. It had selected this method of notifying the men at work upon the platform of the coming danger. It had adopted and practiced the custom of giving the warning, and the respondent had every reason to suppose such custom would be continued. It was negligence for the appellant to omit to give the cautionary signal of approaching danger, and it was not negligence for the respondent, engrossed, as he was, in his work, to wholly rely upon it."

While there is no doubt that the deceased voluntarily assumed the serious risks involved in working in and about the elevator shaft while the elevator was being irregularly operated, the evidence indicates that, during most of the time while he and his associates were employed there, the elevator never came into their neighborhood without a suitable warning of its approach. Even according to the defendant's view, which, as we have already seen, the jury were not bound to adopt, the only times when the usual warnings were not given were the occasions when, for a brief period, twice in each day, the charge of the elevator was committed to Christopher.

In our opinion, therefore, no error was committed by the learned trial court in denying the motion to dismiss the complaint; nor do we find any material error in the rulings upon questions of evidence, or the instructions to the jury. It seems to us, however, that the verdict was much larger than the proof fairly justified, in view of the rule that the recovery in cases of this kind, where the negligence of the defendant has occasioned the death of the person injured, the award must be strictly limited to pecuniary compensation for the actual loss suffered by the widow and next of kin. A careful review of the testimony relating to the earning power and prospects in life of the plaintiff's husband has led the court to the conclusion that a verdict of $15,000 would really represent the maximum measure of damages in this case.

The judgment must be reversed, and a new trial granted, with costs to abide the event, unless the plaintiff stipulates to reduce the verdict to $15,000, and the extra allowance accordingly; but, if such stipulation is given, the judgment, so reduced, will be affirmed, without costs. All concur.