### FOX v. MANHATTAN RY. CO.

(Supreme Court, Appellate Division, First Department. January 10, 1902.)

STREET RAILWAY—PERSONAL INJURY—EVIDENCE—CHARGE.

> Plaintiff was injured by falling between the platform and a train from which he had just alighted. He claimed that he was caught by the train closing the gate before he could get out of the way. The conductor testified that the gate was closed before plaintiff fell, and that the gate of the next car was closed before he got off. A witness testified that he heard the "slam" as the gate closed, and saw plaintiff fall afterwards. The court instructed the jury that if they believed this witness they should find for defendant. *Held* error, as resting the case solely on the testimony of this witness, and excluding from the jury the question of the credibility of the conductor.

Appeal from trial term, New York county.

Action by Matthew I. Fox against the Mahattan Railway Company. From a judgment for defendant, and from an order denying a new trial, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and PATTERSON, HATCH, and LAUGHLIN, JJ.

John M. Perry, for appellant.
Joseph H. Adams, for respondent.

PATTERSON, J. The judgment and order denying a motion for a new trial in this case must be reversed for an error of the court in an instruction given to the jury. The action was brought to recover damages for injuries sustained by the plaintiff which he claimed were occasioned by one of the defendant's servants starting a train from a station before he (the plaintiff) could safely alight therefrom. The evidence on the part of the plaintiff was to the effect that he and a friend, who was with him, were passengers on a train on the defendant's road, and that they desired to leave the train at the station at 104th street and Eighth avenue, in the city of New York. The plaintiff and his friend had been sitting in the car next to the last of the train. Scheibler, the plaintiff's companion on the train, states that he and the plaintiff left the train by the rear platform of the car, in which they had been sitting, and that they both went out through the same gate. He testified that the train was standing still when he reached the door; that Fox was ahead of him. The plaintiff swore that when he walked out on the platform the guard of the train had his hands on the handles of the gates of the car; that when he attempted to leave the platform the car was stationary, but when one of his feet touched the station platform the car started; that he was twisted around, and fell upon that platform, his legs getting in the space between the car and the station platform. A witness, who was looking from a window of a house near the station, corroborates the plaintiff's version and that of Scheibler. On the other hand, Earle, who was the guard of the train, and in charge of the car from which the plaintiff descended and of the platform of the rear car attached to it (the last car of the train), testified that when the plaintiff and Scheibler undertook to leave the train he (Earle) had one hand on the bell cord ready to give the signal to

start, and that he kept that hand upon the cord until both the plaintiff and Scheibler had left the car; that they left from the rear platform of the car, the plaintiff going first, and Scheibler behind him. The guard also testified that when they (plaintiff and Scheibler) reached the gate of the fourth car the gate on the front platform of the rear or fifth car had been closed, and that the accident happened to the plaintiff by his turning quickly, and slipping on the wet platform of the station, and thus he fell into the space between the car and the station platform. The testimony shows that the plaintiff left the train from the rear platform of the fourth car.

The negligence imputed to the defendant, if there were any, consisted in the guard, Earle, giving the signal by which the train was started before the plaintiff could safely leave. Earle's testimony is that the gate of the front platform of the rear car was closed. The defendant undertook to show by a witness named Chapman that the gate on the platform of the car the plaintiff left was closed after the plaintiff left it. He testified that he was a passenger in that car; that he saw the plaintiff leave it, and heard the gate "slam"; that he could see through the side window, and saw the plaintiff's body disappear after the train had moved, and after the gate was shut, because he heard it "slam." This witness did not testify that he saw the guard close the gate, but his testimony, taken in connection with the statement of the guard that the gate of the rear car was closed before the plaintiff left the train, would establish that the "slam" heard was of the gate on the platform from which the plaintiff alighted. In that state of the proof, counsel for the defendant asked the trial judge to instruct the jury that, if they believed the testimony of the passenger Chapman, their verdict should be for the defendant; and the court so charged, to which an exception was taken by counsel for the plaintiff. Thus it will be seen that the learned trial judge left to the jury the determination of the whole issues upon the testimony of Chapman alone. That witness did not see what gate was closed when he heard the "slam." But for the testimony of Earle, it might well have been that it was the gate of the rear car the noise of closing which Chapman heard, for Earle testified that there was an interval of but a second or two between the closing of both gates. By the instruction given to the jury, the court took away from them the credibility of Earle. True that, where one who is a disinterested witness in no way discredited testifies to a fact within his own knowledge, and not in itself improbable or in conflict with other evidence, what he testifies to is to be regarded in law as established, so that it cannot be ignored either by the court or the jury. Kavanagh v. Wilson, 70 N. Y. 179. But where a person to whose fault or negligence an injury suffered is imputed, and that person seeks to exonerate himself by his own testimony, he is an interested party, and his credibility is for the jury. Hoes v. Railroad Co., 5 App. Div. 154, 39 N. Y. Supp. 40; Schmitt v. Insurance Co., 13 App. Div. 122, 43 N. Y. Supp. 318; Wohlfahrt v. Beckert, 92 N. Y. 490, 44 Am. Rep. 406. It was for the jury to say whether they would believe the testimony of Earle that the gate of the last car had been closed before the plaintiff left the train,

for, if they did not believe that interested witness, then it might have been that Chapman heard the noise of the closing of that gate as the train started, and he may not have heard at all the sound of a subsequent closing of the gate of the platform of the car from which the plaintiff alighted. The plaintiff's right should not have been absolutely disposed of by the testimony of Chapman, nor the fate of the case made to depend upon what might be, after all, only an assumption that the noise of the closing of the gate which Chapman heard was of that on the platform of the car the plaintiff left.

We think, for that reason, that the judgment and order appealed from must be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur; VAN BRUNT, P. J., in result.