[S. F. No. 3879.   In Bank.—November 29, 1907.]

# EDWARD J. O'NEILL, by his Guardian ad Litem, William J. O'Neill, Respondent, v. THOMAS DAY COMPANY, Appellant.

INSTRUCTIONS—FAILURE OF JURY TO FOLLOW ERRONEOUS INSTRUCTION—APPEAL.—While the jury should conform to the instructions of the court upon matters of law, if it appear to the appellate tribunal that an instruction was erroneous, it will not disregard a verdict contrary to such erroneous instruction.

NEGLIGENCE — MASTER AND SERVANT — CONFLICTING INSTRUCTIONS TO SERVANT—CONTRIBUTORY NEGLIGENCE.—Where a minor about sixteen years of age was given conflicting instructions by his employer as to the manner of operating a machine at which he was to work, one of which methods was safe and the other of which was dangerous, it cannot be said as matter of law that he was guilty of contributory negligence in operating the machine by the unsafe method.

ID.—MISCONDUCT OF ATTORNEY—QUESTION ASKED JUROR ON HIS VOIR DIRE.—In an action by a servant against his employer to recover damages for personal injuries alleged to have been caused by the latter's negligence, the fact that the attorney for the plaintiff on the examination of a juror on his *voir dire* asked him whether he at any time had obtained a policy of accident insurance in a company in which it was understood the defendant was insured, is not misconduct warranting the defendant a new trial, if the question was subsequently withdrawn and no other question of the kind was repeated.

CONTEMPT—REFUSAL TO ANSWER QUESTIONS ON DEPOSITION—STRIKING OUT COMPLAINT.—A plaintiff, regularly subpœnaed by the defendant for the taking of his deposition before a notary, who appeared and refused to answer pertinent and material questions propounded to him, may be punished for a contempt of court, and his complaint may be stricken out under section 1991 of the Code of Civil Procedure.   Before, however, the complaint can be stricken out the plaintiff must be adjudged guilty of contempt; and as such contempt was committed out of the immediate presence of the court a citation and showing is necessary.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial.   Frank H. Kerrigan, Judge.

The facts are stated in the opinion of the court.

Van Ness & Redman, and T. C. Van Ness, for Appellant.

Sullivan & Sullivan, and Theo. J. Roche, for Respondent.

HENSHAW, J.—This is an action by an employee of defendant to recover damages for personal injuries caused by the alleged negligence of the defendant. The cause was tried before a jury, which rendered a verdict in favor of plaintiff for three thousand dollars. From the judgment following this verdict and from the order denying its motion for a new trial defendant appeals.

The complaint alleged that plaintiff, who was a minor about sixteen years of age, was set to work upon a certain stamping machine without adequate or any instruction as to the use of the machine, without being informed that the machine was defective and imperfect, dangerous, and unsafe, and without knowledge that the machine and appliances used in operating it were dangerous. It is shown in evidence that the machine was operated by placing the foot upon a treadle, which caused the stamp to descend. If the foot was allowed to remain a moment too long upon the treadle the stamp rose and descended again, the foreman of the shop testifying that this had happened to him through his inadvertence and forgetfulness. It was also in evidence that from time to time the machine would get out of order and the stamp would descend when the treadle had not been moved at all. The plaintiff testified that this actually occurred upon the afternoon when he was first called upon to operate the machine. Upon the first afternoon his duty consisted in slipping flat circular disks upon the die of the machine, and the stamp descending pressed them into "canopies" in shape like a flat-brimmed sugar-loaf hat. The next morning he was engaged in the second process in the manufacture of these canopies. Here the die and stamp were changed somewhat, and the stamp pressed out the rim of the canopy. While engaged in this work the stamp descended and crushed three of his fingers, necessitating amputation.

Appellant most strongly insists that the evidence of plaintiff himself shows that he was guilty of contributory negligence so as to bar his right of recovery. Herein the contention is that it is established by plaintiff himself, by Betchtel, the foreman of the shop, who gave plaintiff instructions as to the use

of the machine, and by Mulligan, a witness called for plaintiff, that the plaintiff had been frequently warned against placing his fingers under the stamp in adjusting the disks or canopies, that as plaintiff must have disobeyed these instructions, or otherwise his fingers could not have been crushed, the case is one where the contributory negligence of the plaintiff is conclusively established by the uncontradicted facts. Were this all of the evidence upon the matter, appellant's contention would be unanswerable. But the record discloses that the proposition is not so simple as this statement of it would indicate. Thus, the foreman Betchtel testified: "I got a die in it and I put it in the press, and then I told the boy, 'Now come on my boy; I got a nice job for you. I will show you the way to do it. Watch me.' I sat down at the press myself, started the machine, and I made some of these shells. Then I got up from the chair, and I tell the boy, 'Now sit down and do the same way I show you before.' I said, 'Boy, now watch me; watch and see the way I do that work.'" Here then was a direction to the boy to do the work as the foreman himself was doing it. As to the method employed by the foreman, which was to serve as instruction for the boy, the testimony of the plaintiff is: "He showed me how to put it in the die. He put it in with his fingers. If you drop them in they get crooked. He took them in his hand and slipped them in the die and told me that was the way to do it. He put the whole of his fingers under the punch to straighten the cup. He put below the second joint of his fingers under the punch. Then he put the cup in the die. Most every time he put it in with his fingers under the punch. When it tilted, he would put the fingers of his hand in the die under the punch and straighten them out. . . . The operation, according to my ideas, would be that he would take his foot off the treadle. Then he would take one of those cups and push it in with his fingers under the punch, and then he would take his fingers out, and then he would put his foot back on the treadle and then punch that cup down. . . . He did not on any occasion tilt it straight from the outside, nor did he tell me that when you tilted it in you were to touch it from the outside." Further the plaintiff testifies: "He told me, 'To get the cups in the die, you put your fingers in.' He said, 'Look out for your fingers or you will get them cut off.' But you

could not get the cups in any other way than to get your fingers in.'' The witness Mulligan also testifies as to the foreman's demonstration of the method to be employed: ''I saw Mr. Bechtel show plaintiff how to put in the cup in case it got tilted. . . . Some of the time I saw Mr. Bechtel put his finger in between the punch and the die when he was showing the plaintiff.'' It appears, then, that from the foreman the boy received conflicting and contradictory instructions, the one verbal, not to put his fingers under the stamp; the other physical by way of demonstration, coupled with directions that the method shown him was the method which he was to adopt. By this method he was to place his fingers under the stamp in adjusting the disks and cups, and, according to the plaintiff's own testimony, he knew no other way of adjusting them. In this condition of the evidence contributory negligence as matter of law may not be imputed to a minor plaintiff because he follows one or another of two conflicting and contradictory instructions as to the method which he is to employ in doing his work.

It is next contended that under the instruction given by the court upon the subject of contributory negligence, the verdict is against law. That instruction is as follows:

''If you believe the statement of the plaintiff that on the afternoon that he was put to work the punch did on one occasion come down at the time plaintiff's foot was not upon the treadle and the plaintiff, at that time escaped having his fingers crushed by reason of this unexpected coming down of the punch, and further find that the plaintiff, in operating the machine thereafter and up to the time of the accident of which he complains, was nervous because of fear that the punch would again, in like manner, come down when his foot was not upon the treadle, and that, knowing and feeling this, and knowing and understanding that the punch might come down while his fingers were under the punch, plaintiff did not, notwithstanding such knowledge, nervousness and fear, refrain from calling the attention of the foreman to the fact that the punch had acted in the manner it had, and placed his fingers in such position that the coming down of the punch in like manner would strike and injure them, and that the punch then again came down without plaintiff's foot being upon the pedal, and injured them to the extent that they

were injured, then, and in that case, plaintiff was guilty of contributory negligence, and your verdict, if you find the facts to be as above stated, should be in favor of the defendant.''

It may not be denied that if this instruction is to be considered the law of the case, to the extent that an observance of its directions was compulsory upon the jury, the verdict was against law and should necessarily have been for the defendant; because the instruction enumerated certain facts, and told the jury that if they found those facts to exist plaintiff was guilty of contributory negligence. Those facts indisputably did exist, that is to say, the boy was nervous, he had been warned against placing his fingers under the punch, and notwithstanding such knowledge, nervousness, and fear, he did refrain from calling the attention of the foreman to the fact that the punch had once before descended while his foot was upon the treadle, and he did in fact place his fingers under the punch so that they were crushed. But from what has previously been said in reference to the contradictory directions given by the foreman, it is apparent that the instruction given by the court was itself erroneous in point of law, because, under the evidence, the facts enumerated in the instruction were not, in and of themselves, sufficient to convict the plaintiff of contributory negligence. All consideration of the conflicting directions given to the plaintiff was eliminated. But it is urged under the authority of *Emerson* v. *Santa Clara County*, 40 Cal. 543, that even though the instruction be erroneous, nevertheless, for the guidance and direction of the jury, it became their law, and their failure to observe and follow it was error calling for a reversal of the case. Such unquestionably was the rule laid down in the Emerson case, but it is a rule which has long ceased to commend itself to this court, and, indeed, has been distinctly discredited and overruled (*Altoona Q. M. Co.* v. *Integral Q. M. Co.*, 114 Cal. 104, [45 Pac. 1047]; *Edwards v. Wagner*, 121 Cal. 376, [53 Pac. 821]), and the rule now is that while the jury should conform to the instructions of the court upon matters of law, if it appear to the appellate tribunal that an instruction was erroneous, it will not disregard a verdict contrary to such erroneous instruction. This, it may be added, is the general rule, as it certainly is a wise and just one. (See *Armstrong's*

*Administrator* v. *Keith*, 3 J. J. Marsh. (Ky.) 153, 20 Am. Dec. 131, and note.)

Plaintiff, regularly subpœnaed by defendant for the taking of his deposition before a notary, appeared, and under advice and instruction of his attorney, refused to answer pertinent and material questions propounded to him. Defendant's attorney moved the court, under section 1991 of the Code of Civil Procedure, to strike out his complaint, and the motion was denied. Thereafter, and when the jury had been impaneled, the defendant's counsel objected to the case proceeding, and to evidence being taken while plaintiff was in contempt for refusing to answer the questions propounded to him upon his deposition. The court overruled the objection. At the time these proceedings were had, the law stood as expounded in *Lezinsky* v. *Superior Court*, 72 Cal. 510, [14 Pac. 104], and was to the effect that such a refusal to testify was not punishable as a contempt of court. It had also been declared that the provision of section 1991 of the Code of Civil Procedure, authorizing the court to strike out the answer of a recalcitrant defendant, if enforced, would deprive such a party—haled into court without his consent—of his property without due process of law. (*Foley* v. *Foley*, 120 Cal. 33, [65 Am. St. Rep. 147, 52 Pac. 122].) Under the ruling as it then stood in the Lezinsky case, the attorneys for defendant were justified in their failure to ask the court to proceed against plaintiff in contempt. That case has since been distinctly overruled in *Burns* v. *Superior Court*, 140 Cal. 1, [73 Pac. 597], and it is declared that such conduct is a contempt, and punishable as such. Upon the other hand, the situations of a plaintiff and of a defendant are vitally different, so far as concerns the operation of section 1991 of the Code of Civil Procedure. A plaintiff is always a voluntary actor before a court. A defendant is always under compulsion. The plaintiff is always seeking affirmative relief at the hands of the court. The defendant is merely contesting plaintiff's right to such relief. While, therefore, it is improper, under such circumstances, to deprive a defendant of the right to make his showing as to the matter urged against him, and, by striking out his answer, compel him to submit to a judgment without a hearing upon the merits, the case of a plaintiff is far different. He is seeking the court's aid, and it is manifestly just and

proper that, in invoking that aid, he should submit himself
to all legitimate orders and processes.     And certainly no
plaintiff can, with right or reason, ask the aid and assistance
of a court in hearing his demands, while he stands in an atti-
tude of contempt to its legal orders and processes.     Section
1991 of the Code of Civil Procedure declares as to such a
plaintiff that his contumeliousness may be punished as a
contempt and his complaint may be stricken out.   By analysis,
this section manifestly requires that before a plaintiff is pun-
ished he must be adjudged guilty of contempt.     To such a
judgment for a contempt, committed out of the immediate
presence of the court, a citation and showing is necessary.   The
court having found the contempt, must punish the plaintiff
for it, and in a proper case that punishment may take the
form of a rule striking out his complaint.   A certain discretion
is vested in the court in this regard, but it is not a discretion
which would permit the court in one case and under a given
state of facts, to strike out the complaint, and in another case
and under an identical state of facts to refuse to strike it
out.   If the plaintiff upon being adjudged guilty of contempt
should express his willingness to obey further orders of the
court, and to answer the questions propounded to him, clearly
whatever other punishment might be awarded against him
for his contempt, that of striking out his complaint would be
altogether too severe.   But upon the other hand, if the plaintiff
remain obdurate and contumacious, it would not only be the
right, but as well the duty of the court, to refuse to proceed
with his litigation further, and to evidence its refusal by
ordering the pleading stricken from the files.   Such, we take
it, is the plain meaning of section 1991.   But in every case
it will be noted that before any punishment may be awarded,
the party must be adjudged in contempt.   No such judgment
was rendered against this plaintiff, and for that reason, as
the penalties which defendant asked are imposable only after
the party is found to be in contempt, the court was warranted
in its refusal to grant defendant's motions.

Misconduct upon the part of plaintiff's attorneys is charged.
This misconduct consisted in asking a juror whether at any
time he ever obtained from the Employers' Liability Associa-
tion of London a policy of insurance.   To this question objec-
tion was made upon the ground that it was irrelevant, incom-

petent, immaterial, and improper. In presenting the matter
to the court the attorney for the plaintiff stated that he had
a right, upon the examination of jurors, to ascertain whether
a juror had at any time been interested in policies of insurance
issued by that company, so as to enable him to determine the
state of mind of the juror, and to assist him in determining
whether to exercise a peremptory challenge, it appearing or
being understood that defendant had taken out insurance in
this company. The objection was overruled by the court, but
the question was subsequently withdrawn, and no other ques-
tion of the kind was repeated. There was nothing in this to
demand a reversal and retrial of the case. The same circum-
stances appeared in *Russell* v. *Pacific Can Co.*, 116 Cal. 527,
[48 Pac. 616], where the identical objection was presented,
and it was there declared as above.

For the foregoing reasons the judgment and order appealed
from are affirmed.

Shaw, J., Angellotti, J., Lorigan, J., and McFarland, J.,
concurred.