[Civ. No. 497. Third Appellate District.—December 22, 1908.]

MATTIE C. WATTS, Respondent, v. EUGENE P. MURPHY et al., Appellants.

ACTION FOR DEATH OF ELEVATOR OPERATOR—DEFECTIVE ELECTRICAL MECHANISM—LIABILITY OF EMPLOYER—WANT OF ORDINARY CARE—ERRONEOUS INSTRUCTION.—In an action for the death of the operator of an electric elevator, caused by a worn handle, producing a shock, which felled him to the floor while ascending alone, and caused the crushing of his head between floors, the liability of his employer is limited to want of ordinary care in failing to provide him with reasonably safe mechanism; and it was prejudicially erroneous for the court, in instructing the jury, to classify operators with passengers, so as to require from the owners the utmost care and diligence of very cautious persons in providing proper and safe machinery as far as human foresight can go, and responsibility for injury caused by the slightest neglect against which human foresight could have guarded.

ID.—PREJUDICIAL ERROR NOT CURED BY CORRECT INSTRUCTION.—The prejudicial error appearing in such erroneous instruction was not cured by the fact that the court in another part of its charge instructed the jury correctly as to the duty and degree of care due from a master to a servant, it being impossible for the jury to determine which of the two instructions was correct, and impossible to tell which was adopted by them in reaching their verdict, and it appearing that each of the contradictory instructions was applicable to the facts appearing in the case.

ID.—LIABILITY FOR DEATH NOT AFFECTING MEASURE OF RESPONSIBILITY. The liability for the death of a servant accruing to his heirs cannot effect the measure of responsibility of an employer for the death of his servant, and if it should appear that the employer was not responsible to his servant, and that there was no breach of duty on his part toward the deceased, warranting recovery by the servant, if he had lived, there can be no recovery by his heirs.

ID.—LAW OF NEGLIGENCE NOT CHANGED.—The statute in permitting a recovery by the heirs of the deceased has not changed the law respecting negligence.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial. Thomas F. Graham, Judge.

The facts are stated in the opinion of the court.

L. A. Redman, for Appellants.

Franklin P. Bull, and L. A. Wittenmyer, for Respondent.

HART, J.—This is an action for damages for the death of the husband of plaintiff through the alleged negligent acts of the defendants. The jury assessed the damages at the sum of $5,000, and judgment was thereupon entered for that amount.

This appeal is from said judgment and from the order declining to grant the defendants a new trial.

The deceased, Daniel Watts, husband of plaintiff, was, on the twenty-eighth day of March, 1902, the day on which the accident occurred resulting in his death, and had been for two years prior thereto, employed by the defendants as janitor of their building, situated on the northeast corner of California and Kearny streets, in the city of San Francisco. Said building was used as an office building and as such occupied by tenants of the defendants, and, for the purpose of carrying passengers and freight from one floor to another in said building, the defendants maintained an elevator propelled and operated by means of electricity. It had been the custom of the deceased to transport himself and his implements from floor to floor during the course of his work as janitor. Between the hours of 12 and 1 o'clock each day, when the person regularly in charge of the elevator was absent, the deceased operated the same and carried passengers to the various floors. In addition to the duties ordinarily incident to the position of janitor, the deceased was required, under the terms of his employment, to see that the elevator was at all times kept in running order, and, whenever repairs thereof were necessary, either to attend to the matter himself (he claimed, according to the defendant, E. P. Murphy, to have some skill and experience as a machinist, although, as we understand the evidence, made no pretentions to knowledge of electrical mechanism) or otherwise have the same attended to by an electrician. The evidence discloses that some time before the accident the insulation of the lever handle, by means of which the elevator was operated, had become worn, the result of which was that the operator would, occasionally, receive a shock from the electricity, not

severe enough, however, to do any serious damage. This de-
fect, according to the testimony of Frank Walton, who was
the regular operator of the elevator on the day the acci-
dent happened, was known to the deceased for a considerable
time before he met his death. The accident occurred between
the hours of 8 and 9 o'clock in the morning. No one was
in the elevator with the deceased at the time he lost his life.
The witness, Amark, testified that just before half-past 8
o'clock he "climbed up" the stairs to the fifth floor. When
he entered the building he saw and saluted Watts, who was
then engaged in mopping the first floor. After reaching the
fifth floor, Amark returned by the stairway to a point be-
tween the fifth and fourth stories, where there was a landing
on which he was resting and waiting for some one he de-
sired and expected to meet, when the elevator came up to the
fourth story and "stopped for a second and then flew up"
and stopped at the fifth floor. This witness, on making an
inspection, saw blood running from the direction of the fifth
floor down to the fourth. He hastened to the fifth floor and
found the body of the deceased lying in the elevator, with
his head wedged in between the fifth floor of the building and
the shaft of the elevator.

There is no evidence in the record and presumably, from
the circumstance that Watts was alone in the elevator none
was available, from which the precise manner in which the
accident and consequent death of Watts occurred can or could
be determined. It is the theory of the respondent, however,
that while engaged in operating the elevator for the pur-
pose of transporting himself from one floor to another for the
purpose of performing his duties as janitor, the deceased
received an electric shock of sufficient force to throw him to
the floor, and, as the elevator was ascending, his head was in
such position as to have been caught between the elevator
shaft and the fifth floor of the building, thus producing a
fracture of his skull, from the effects of which death fol-
lowed.

The appellants complain of certain instructions which were
read to the jury by the court, and further contend that, inas-
much as there is evidence showing that the deceased was
fully aware of the defect in the machinery of the elevator
which was the cause of the accident resulting in his death, he
assumed the increased risk occasioned by such defect. It is

also urged that, as there was no duty resting on the deceased within the scope of his employment to operate the elevator for the purpose of transporting passengers at the time at which the accident occurred, and as he was using it, when he met his death, for his own personal convenience, he was, therefore, a mere licensee, and as such assumed all risks attending its operation.

But it will be unnecessary to consider in detail all the errors which are assigned and all the questions arising therefrom. I think the court committed serious and prejudicial error by the giving of the following instruction: "I instruct you that persons maintaining an elevator in a building are common carriers, and the same duties and responsibilities rest upon them as to care and diligence as on the carriers of passengers by railways. Though they are not insurers of the absolute safety of the passengers *or operators* (italics ours), they are bound to use the utmost care and diligence of very cautious persons in providing proper and safe machinery as far as human care and foresight can go, and are responsible for injury occasioned by the slightest neglect against which human prudence and foresight might have guarded. The responsibility is proportioned to the danger, and is of the highest character in the care of those who operate elevators for lifting persons from one level to another."

Thus the jury were told that the liability of a common carrier to an employee, suffering injury while engaged in operating a contrivance or vehicle for the transportation of passengers, was the same as its liability to passengers. Or, to state the proposition in a different way, that a common carrier is bound to the same degree of care in the matter of the protection of employees against injury or loss as is required of it with reference to passengers.

The instruction states the law correctly as to passengers, but as to operators or employees it is not only opposed to the rule as declared by the text-writers and the courts, but is in plain conflict with the express provision of our statutory law upon the subject.

Section 1971 of the Civil Code reads: "An employer must in all cases indemnify his employee for losses caused by the former's want of ordinary care." The rule is thus stated by Shearman & Redfield in their work on "Negligence": "The master is bound to use ordinary care, diligence and skill for

the purpose of protecting his servants from unnecessary risks in his service; but he is not bound to use any higher degree of care. A railroad company, for example, although bound to use the utmost care and diligence for the protection of its passengers from injury, owes no such duty to its servants, although they may be exposed to the same perils. . . ." (See *Dolan* v. *Sierra Ry. Co.,* 135 Cal. 435, [67 Pac. 686]; *Brymer* v. *Southern Pacific R. R.,* 90 Cal. 496, [27 Pac. 371]; *Smith* v. *St. Louis etc. R. R.,* 69 Mo. 32, 33 Am. Rep. 484; *Warner* v. *Erie R. R. Co.,* 39 N. Y. 471; *Sappenfield* v. *Main St. etc. R. R. Co.,* 91 Cal. 48, [27 Pac. 590].)

In the last-mentioned case the plaintiff, while employed on one of the defendant's street-cars, met with an accident in which he sustained personal injuries. The court instructed the jury as follows: "It is the duty of one who employs another in his business to furnish to such employee such tools, implements, appliances, and machinery as may be needed in the work to be done for the employer, in good order, of sound material, and in safe condition for use, such as will be reasonably best calculated to insure safety in their use by the employee, and such as combine the greatest safety with practical use. . . ." The supreme court, speaking of and condemning this instruction, as applied in that case, says: "This instruction was erroneous in declaring that the obligation upon the master required him to furnish such appliances 'as combine the greatest safety with practical use.' By this the jury were told that the appliances required must be such as in practical use will be found to afford the greatest safety; that is, those appliances which from experience are found to combine all the provisions for safety that are capable of being used. The instruction is substantially the same as one given in the case of *Treadwell* v. *Whittier,* 80 Cal. 574, [13 Am. St. Rep. 175, 20 Pac. 266], which was approved by this court; but the circumstances which rendered such instruction proper in that case do not exist here. The court in that case was defining the duties of the proprietor of a passenger elevator, and likening them to the duties imposed upon the carrier of passengers, which required him to keep pace with modern improvement and invention, and adopt such newly invented appliances as will secure the safety of those whom he carries. The relations of the defendant to the plaintiff in this case differ materially from those existing between the carrier and

its passengers; for, instead of being in any respect an insurer of his safety, the defendant held to the plaintiff only the ordinary relations of a master to his servant. The relative liability of a carrier to its passengers and to its employees is stated by the court of appeals in New York, in *Warner* v. *Erie Ry. Co.,* 39 N. Y. 471, as follows: 'We are not now dealing, it must be remembered, with the liability which a railroad corporation assumed in respect to the safety and security of passengers transported on their road for a compensation, and in regard to whom they become absolute insurers against all defects which the highest degree of vigilance would detect or provide against. The liability here, if there is any, is measured by that lower standard which all the authorities recognize in the case of an employee, and which is answered if the care bestowed accords with that reasonable skill and prudence which men exercise in the transaction of their accustomed business.' ''

It is true that the court in the case at bar in another part of its charge instructed the jury correctly as to the duty and degree of care due from a master to a servant; but, as the supreme court says in the case from which I have just quoted: ''The error in giving the foregoing instruction was not obviated by the instruction subsequently given at the instance of the defendant, wherein the law applicable to the case was properly presented. The jury could not determine which of the two propositions was correct. They were bound to accept all the propositions that the court instructed them upon as a correct statement of the law by which they were to be guided, and if the several instructions are inconsistent or contradictory, it is impossible to tell which was adopted by them in reaching their verdict. (*Brown* v. *McAllister,* 39 Cal. 573; *Chidester* v. *Consolidated Ditch Co.,* 53 Cal. 56.)''

Counsel for the respondent do not seriously undertake to defend the criticised instruction for which, in my judgment, a reversal of the judgment and order is demanded; but they say that it involves only an abstract statement which could not have been treated by the jury as throwing any light on the law applicable to the case. I cannot so view it. An abstract statement of a legal proposition is only a declaration, in a general way, of certain principles of law which have no particular or special bearing upon the issues and facts of a particular case; but when a principle, which may, on some

occasions, be stated abstractly, happens to have particular and
peculiar relevancy to the conditions which the evidence dis-
closes exist in a case in which it is declared, then it assumes
a concrete form, and, if erroneous, must be considered for
the purpose of determining whether it was prejudicial or
innocuous in its effect upon the party against whom it was
given.

The instruction under consideration was, it seems to me,
peculiarly applicable to the facts of this case. The deceased
was the *operator* of the elevator on the occasion of the accident
through which he came to his death. Whether the use of the
elevator in the early morning hours, before the regular oper-
ator assumed charge thereof, was essentially within his rights
as janitor of the building, or his use of the same was that
of a mere licensee, in which case he assumed all the risks
attending his operation of the elevator, is not material to the
consideration of this instruction, for the evidence shows that
he had habitually used and operated the elevator, in the
discharge of his duties as janitor, so using it at the time he
was killed, and the instruction under review treated and
assumed him to be the operator. If the jury understood the
instruction, and it must be assumed that they did (*Henderson*
v. *Los Angeles Traction Co.*, 150 Cal. 697, [89 Pac. 976]),
then certainly they must have understood the court to declare
that, as a matter of law, the degree of care and diligence re-
quired to be exercised by the defendants toward the deceased,
who was *operating* the elevator when he was killed, was the
same as that required to be exercised by them toward pas-
sengers transported from floor to floor by means of said
elevator.

Counsel declare, however, that there is a distinction in the
application of the principle enunciated by section 1971 of the
Civil Code, *supra,* between actions by servants for personal
injuries sustained by them and actions for damages for the
death of servants. But, as is said by counsel for the defend-
ants, "appellants are not liable at all unless there has been a
breach of some legal obligation. The obligation in this case
was founded on the relationship existing between the appel-
lants and the deceased janitor—that is, the relationship of
master and servant. If there was no breach of duty warrant-
ing recovery by the servant had he lived, then it must follow
that appellants committed no tort, and are not liable to his

heirs. The statute, in permitting a recovery by the heirs of the deceased, has not changed the law respecting negligence''; citing *East Tennessee etc. R. R. Co.* v. *Maloy,* 77 Ga. 328, [2 S. E. 945], and other cases.

The point that there is not before us a sufficient record on which to review the action of the lower court in refusing a new trial does not possess sufficient merit, in my opinion, to require special notice.

For the reasons herein stated, the judgment and order are reversed.

Chipman, P. J., and Burnett, J., concurred.