[Civ. No. 1260.   First Appellate District.—June 11, 1913.]

# JAMES LUCAS, Respondent, v. P. J. WALKER, Appellant.

NEGLIGENCE—OPERATION OF UNFINISHED ELEVATOR—INJURY TO WORK-
MAN IN SHAFT.—Where a contractor, in erecting a building in
which an elevator company is installing elevators under a subcontract
with him, arranges with the elevator company to allow him to
run one of the elevators before it is completed and while the work
of completion is going on, his employee, in operating the elevator,
owes the duty to exercise ordinary care to avoid injuring employees
of the elevator company by any positive act; and if such operator,
knowing that one of such employees is at work at a certain point
in the elevator shaft, fails to give him warning of the approach of
the car, and the car strikes him, the contractor is responsible for
the resulting injuries.

ID.—EMPLOYEE AS LICENSEE OR INVITEE.—The employee of the elevator
company is, in such case, on the premises as an invitee of the con-
tractor, and as such is entitled to the observance of ordinary care;
he is not merely a licensee.

ID.—DUTY TOWARD LICENSEE.—A licensee under such circumstances is
entitled to recover for any injury to himself, in the absence of
contributory negligence upon his part, resulting from the active
negligence of the licensor, and such licensor is responsible in dam-
ages for any overt act of negligence, though the same is neither
willful nor wanton.

ID.—CONTRIBUTORY NEGLIGENCE OF WORKMAN IN ELEVATOR SHAFT.—
The employee cannot be held guilty of contributory negligence as
a matter of law in working in the elevator shaft and relying on
the elevator operator to give him warning of the approach of the
car.

ID.—WARNING TO WORKMAN IN SHAFT—DUTY AND AUTHORITY TO GIVE.—
The operator of the elevator, who was an employee of the contrac-
tor placed in charge of the elevator by the contractor's superin-
tendent had authority, under the circumstances, to promise to give
the workman warning.  Such promise was in the exact line of his
duty.  A person placed in charge of an elevator to operate it while
other workmen, to whom his employer owes the duty of ordinary
care, are legitimately engaged in working in the elevator shaft, is
authorized to take all proper precautions to avoid injuring such
persons, among which is the duty to give a warning before moving
the car.

ID.—LICENSEE—WILLFUL AND WANTON NEGLIGENCE—INSTRUCTIONS.—
An instruction to the effect that the plaintiff was a mere licensee,

and as such could only recover for wanton or willful injury inflicted by the defendant, is erroneous, when the negligence charged and proved without question and beyond all reasonable doubt consisted of active, positive overt acts of negligence, committed by the defendant against the plaintiff,

ID.—CONFLICTING INSTRUCTIONS—WHEN NOT GROUND FOR NEW TRIAL.—The giving of conflicting instructions is not ground for a new trial, where it is plain that the jury did not follow the erroneous instruction, but completely ignored it, and gave a verdict which can be justified only under the instruction which states the correct rule applicable to the case.

ID.—ERRONEOUS INSTRUCTION—WHEN NOT GROUND FOR NEW TRIAL.—Where it is plain that the jury disregarded and ignored erroneous instructions given at appellant's request, no just ground for a new trial exists.

ID.—VERDICT CONTRARY TO INSTRUCTIONS—WHEN NOT REVERSIBLE ERROR.—While the jury should conform to the instructions of the court upon matters of law, if it appears to the appellate tribunal that an instruction was erroneous, it will not disregard a verdict contrary to such erroneous instruction.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. Geo. A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

Lilienthal, McKinstry & Raymond, and Wilson & Wilson, for Appellant.

Sullivan & Sullivan and Theo. J. Roche, for Respondent.

HALL, J.—Plaintiff recovered judgment against defendant in the sum of twenty thousand dollars in an action for damages for personal injuries alleged to have been inflicted upon plaintiff through the negligence of defendant.

In due time defendant made a motion for a new trial, which was denied, and thereafter defendant duly appealed from the judgment and order denying his motion for a new trial.

Defendant as a builder and contractor was engaged in the construction of a six-story building in the city and county of San Francisco. The Otis Elevator Company, under a subcontract with defendant, put two elevators in said building.

Defendant, being desirous of using one of the elevators before its entire completion, through his general superintendent temporarily accepted one of said elevators, with the understanding that the elevator company should complete them thereafter. In order to complete the elevators it was necessary to put in certain appliances, attachments, and electrical connections, which required that the workman so engaged should, while standing on top of the elevator car in one shaft, lean over and project his head into the other elevator shaft. Of this the general superintendent of defendant was fully informed, and promised that in operating the elevator he would see that the workmen of the elevator company were protected, and that one Applegarth, an employee of defendant, would be put in charge as the operator of the elevator. Accordingly, Applegarth was put in charge as the operator of the elevator, and so operated it for several days before the accident occurred. Plaintiff was an employee of the elevator company, and it was his duty as such employee to assist in putting in these attachments and electrical connections. Before proceeding with such work he informed Applegarth of his intention, and informed him of the place where and the conditions under which he would work. In fact Applegarth conveyed him to the point where he was to work, and had full knowledge of the peril to him of any operation of the elevator car in the shaft where plaintiff would be obliged to project his head while doing the work. Applegarth had been in the habit of calling out a warning before starting his car, and expressly promised and agreed with Lucas upon his going to work to give him such a warning. Lucas went to work and for several trips, which were made at irregular intervals, Applegarth did give such warning to plaintiff. Applegarth then made a trip without giving the warning, but plaintiff noticed the approach of the car and avoided the danger, but again admonished Applegarth to give the necessary warning before operating the car. Shortly after, however, Applegarth lowered his car without giving any warning to plaintiff, who, as Applegarth well knew, was still at work putting in the connections which required him to lean over so that his head projected into the shaft in which the car was being operated. Plaintiff did not notice the approach of the car,

and was struck on the head by the descending car and was frightfully injured.

It is not claimed upon behalf of plaintiff that Applegarth was guilty of committing a willful and wanton injury to him, but that he was guilty of negligence which caused the injury.

I.

Appellant contends that plaintiff was simply a licensee, and cannot hold the defendant for his injuries unless the defendant was guilty of wanton or willful conduct, which it is not claimed by plaintiff was shown.

In this connection appellant calls our attention to some instructions of the court, in which it was said in effect that Lucas was a mere licensee when doing the work in the elevator shaft, and in consequence that defendant owed him no legal duty except to do him while upon the premises no wanton or willful injury.

At the outset of appellant's argument he insists that, whether right or wrong, these instructions became the law of the case, and a verdict contrary thereto must be set aside. In support of this position he cites *Emerson* v. *County of Santa Clara* (40 Cal. 543) and some subsequent cases supporting the same proposition. But *Emerson* v. *County of Santa Clara* has been expressly overruled upon this point, and the doctrine of such case has been finally relegated to the scrap heap of obsolete and abandoned law. ''The rule now is that while the jury should conform to the instructions of the court upon matters of law, if it appears to the appellate tribunal that an instruction was erroneous it will not disregard a verdict contrary to such erroneous instruction.'' (*O'Neill* v. *Thomas Day Co.*, 152 Cal. 357 [14 Ann. Cas. 970, 92 Pac. 856]; *Compressed Air Co.* v. *West San Pablo etc. Co.*, 9 Cal. App. 361 [99 Pac. 531]; *Altoona Q. M. Co.* v. *Integral Q. M. Co.*, 114 Cal. 100 [45 Pac. 1047]; *Edwards* v. *Wagner*, 121 Cal. 376, [53 Pac. 821].)

The question is therefore presented, Are the instructions relied on by appellant correct statements of the law?

It is perfectly clear from the undisputed evidence in the record that plaintiff was not a mere licensee, but was in fact an invitee. He was working for the Otis Elevator Company, which was doing the work upon which as such employee he was engaged when injured, under a contract with defendant

to do such work for him. He was thus lawfully and properly upon the premises, engaged in business with and of the defendant, and was thus upon the premises as an ''invitee'' of the defendant. As such he was clearly entitled to the observance of ordinary care toward him upon the part of the defendant. (*Dougherty* v. *Weeks,* 126 App. Div. 786, [111 N. Y. Supp. 218]; *Grill* v. *Gutfreund,* 65 Misc. Rep. 506, [120 N. Y. Supp. 86]; *Withers* v. *Brooklyn R. E. Exchange,* 106 App. Div. 255, [94 N. Y. Supp. 328]; *Sesler* v. *Rolf Coal and Coke Co.,* 51 W. Va. 318, [41 S. E. 216].) Many cases could be cited to the same effect.

But it is insisted by appellant, especially in his reply brief, that the complaint in this case does not charge that the elevator company was doing the work under a contract with defendant, but simply that it was doing such work ''with the knowledge and consent of'' defendant; and that this statement only shows that the elevator company and its employees were upon the premises as licensees, and that this court cannot consider the evidence that the elevator company was working under a contract with defendant.,

In the first place it is not at all certain that, even if this be true, it follows that under the complaint plaintiff, as an employee of the elevator company, was upon the premises simply as a licensee. From the whole complaint it does appear that both defendant and the elevator company were engaged in the construction of a certain six-story building, of which neither was the owner. It is a fair construction of the complaint that they were either both working for the owner of the building, or that the elevator company, as an independent contractor, was working for the defendant, who, ''as a builder and contractor'' was ''engaged in the construction of'' the building. In either case defendant certainly owed to plaintiff the duty to exercise ordinary care to avoid injuring him by any positive and overt act committed by defendant or his employees.

But if it be conceded that plaintiff was a mere licensee of defendant when he was hurt it is still true that he was upon the premises and doing the work in question with the knowledge and consent of defendant. This is admitted by the pleadings.

A licensee under such circumstances is entitled to recover for any injury to himself, in the absence of contributory negligence upon his part, resulting from the active negligence of the licensor, and such licensor is responsible in damages for any overt act of negligence though the same be neither willful nor wanton.

The cases cited by the appellant in support of the proposition to the effect that a mere licensee can recover only for willful or wanton injury, are all cases where the plaintiff was either a trespasser or mere licensee, and was injured solely by reason of the unsafe condition of the premises and without any active, or overt act of, negligence committed against him by the occupant or owner of the premises. (*Grundel* v. *Union Iron Works*, 141 Cal. 564, [75 Pac. 184]; *Schmidt* v. *Bauer*, 80 Cal. 565, [5 L. R. A. 580, 22 Pac. 256]; *Herzog* v. *Hemphill*, 7 Cal. App. 116, [93 Pac. 899]; *Means* v. *Southern Cal. Ry. Co.*, 144 Cal. 473, [1 Ann. Cas. 206, 77 Pac. 1001]; *Fitzpatrick* v. *Cumberland Glass Mfg. Co.*, 61 N. J. L. 378, [39 Atl. 675]; *South Bend Iron Works* v. *Larger*, 11 Ind. App. 367, [39 N. E. 209]; *Indian Refining Co.* v. *Mobley*, 134 Ky. 822, [24 L. R. A. (N. S.) 497, 121 S. W. 657].)

The expression found in some of such cases to the very broad effect that no duty is owed to the licensee except not to injure him willfully or wantonly, was but *obiter*, and has no application to a case where the plaintiff is upon the premises of the defendant, and is injured by an overt act of negligence committed against plaintiff by defendant.

A licensor does owe the duty to exercise ordinary care to avoid by any overt act injuring a licensee upon his premises with his knowledge and consent, and is responsible in damages for any injury resulting to the licensee from his overt act of negligence. This is a humane, as it is a well supported rule. (2 Thompson on Negligence, secs. 1725 and 1726; *Pomponio* v. *New York, N. H. & H. R. R. Co.*, 66 Conn. 528, [50 Am. St, Rep. 124, 32 L. R. A. 530, 34 Atl. 491]; *Cahill* v. *Chicago etc. Co.*, 74 Fed. 285, [20 C. C. A. 184]; *Corrigan* v. *Union Sugar Co.*, 98 Mass. 577, [96 Am. Dec. 685]; *Blankenship* v. *Chesapeake & O. Ry.*, 94 Va. 449, [27 S. E. 20]; *Barry* v. *New York Cent. R. Co.*, 92 N. Y. 289, [44 Am. Rep. 377]; *Davis* v. *Chicago etc. R. Co.*, 58 Wis. 646, [46 Am. Rep. 667, 17 N. W. 406]; *Thomas* v. *Chicago etc. R. Co.*, 103 Iowa, 649,

[39 L. R. A. 399, 72 N. W. 783] ; *Garner* v. *Trumbull,* 94 Fed. 321, [36 C. C. A. 361].)

After stating the rule to the effect that the landowner owes no duty to keep his premises safe toward a mere licensee, the court, in *Pomponio* v. *New York, N. H. & H. R. R. Co.,* 66 Conn. 528, [50 Am. St. Rep. 124, 32 L. R. A. 530, 34 Atl. 491], said, "But while this is so, it is also true that the landowner must not himself, by what has been called 'his own active negligence,' injure either the licensee or the party invited, while they are upon his land. This is a duty due to both equally. Toward both, in this respect, he is bound to exercise the same amount of care. Both are upon his premises not as wrongdoers, but by his permission, and in respect to the duty in question we know of no good reason why the nature and extent of it should not be the same in cases of license as in cases of invitation."

The complaint alleged that the plaintiff was injured by the active and positive negligence of defendant. This allegation was amply supported by the evidence. So whether the plaintiff be considered as upon the premises where he was injured either as an inviteee or as a mere licensee, the complaint stated a cause of action which was fully supported by the evidence.

## II.

Appellant contends that the evidence shows as a matter of law that plaintiff was guilty of contributory negligence. We cannot so regard it. "It is only where no fact is left in doubt and no deduction of inference other than negligence can be drawn by the jury from the evidence, that the court can say as a matter of law that contributory negligence is established. Even where the facts are undisputed, if reasonable minds might draw different conclusions upon the question of negligence the question is one of fact for the jury. *Zibbell* v. *Southern Pacific Co.,* 160 Cal. 237, [116 Pac. 513].)

In its essential facts bearing upon the question of contributory negligence the case at bar is quite like the case of *Morgan* v. *Robinson Co.,* 157 Cal. 348, [107 Pac. 695], where the court said, "We think the record before us leaves no rooom for doubt that Pfaeffle" (elevator operator) "showed a lack of due care if, after having agreed with plaintiff" (working in the shaft) "to give warning before starting his elevator, he

did start it without giving such warning. Nor, on the facts supposed and found by the jury, can it be said that Morgan had any reason to anticipate such negligence.''

In the following cases the plaintiff was injured while working in an elevator shaft, which elevator was moved without giving him warning, although such was either the promise or instruction: *Farmers' and Mechanics' Nat. Bank* v. *Hanks,* (Tex. Civ. App.), 128 S. W. 147; *McDermott* v. *Straus,* 123 App. Div. 303, [108 N. Y. Supp. 5]; *Rink* v. *Lowry,* 38 Ind. App. 132, [77 N. E. 967]; *Schmitt* v. *Metropolitan Life Ins. Co.,* 13 App. Div. 120, [43 N. Y. Supp. 318].

In each one it was held that it could not be said as a matter of law that the workman was not justified in relying upon the promised or customary warning. The cases are all strictly in point upon the question of contributory negligence; and especially do we consider the case of *Morgan* v. *Robinson Co.,* 157 Cal. 348, [107 Pac. 695], as decisive of the point that contributory negligence has not been shown as a matter of law. The question was clearly one for the jury.

III.

We cannot agree with appellant's contention that Applegarth had no authority to agree to give warning to plaintiff of the movement of the elevator car. The elevator was turned over to defendant by the elevator company, before all the attachments and connections thereto had been installed, for the convenience of defendant, and upon the understanding that such connections should be subsequently put in by the elevator company, and the defendant also agreed through his general superintendent to put an operator in charge, who would in the operation of the elevator protect the workmen of the elevator company. Applegarth was this operator. As such operator it was his duty to so operate the elevator as to avoid injuring any of such workmen while they were so employed. Knowing that plaintiff was lawfully at work in the elevator shaft, the plainest dictates of care required that he should give him warning before moving the elevator car, even without such an agreement. Certainly he was not going outside of the scope of his employment to promise to do that which the circumstances of the case required that he should do without any such agreement.

The cases relied upon by appellant on this point (*Hall* v. *Poole,* 94 Md. 171, [50 Atl. 703], and *Jossaers* v. *Walker,* 14 App. Div. 303, [43 N. Y. Supp. 891]) are in their facts not very like the case at bar; but if they were we should not feel that they ought to be followed. Rather do we agree with the criticism of such cases contained in the very late case of *Beatty* v. *Metropolitan Building Co.,* 63 Wash. 207, [Ann. Cas. 1912D, 528, 115 Pac. 90], and in *Soderstrom* v. *Patten,* 131 Ill. App. 32. A person placed in charge of an elevator to operate it while other workmen, to whom his employer owes the duty of ordinary care, are legitimately engaged in working in the elevator shaft, is authorized to take all proper precautions to avoid injuring such persons, among which is the duty to give a warning before moving the car. It being his duty to give such a warning, certainly he did not exceed his authority in agreeing so to do. (*Beatty* v. *Metropolitan Building Co.,* 63 Wash. 207, [Ann. Cas. 1912D, 528, 115 Pac. 90]; *Soderstrom* v. *Patten,* 131 Ill. App. 32; *Farmers' and Mechanics' Nat. Bank* v. *Hanks,* (Tex. Civ. App.) 128 S. W. 147.)

IV.

Appellant contends that he is entitled to a new trial because of contradictory instructions.

In this regard he points to an instruction given at the request of plaintiff, to the effect that if plaintiff sustained the injuries complained of through no fault of his own but through the negligence of the defendant, the verdict must be for plaintiff, as being in conflict with the instructions given at the request of the defendant which we have heretofore discussed, to the effect that plaintiff was a mere licensee, and as such could only recover for wanton or willful injury inflicted by defendant.

But the negligence charged and proved without question and beyond all reasonable doubt, being active, positive overt acts of negligence, committed by defendant against plaintiff, the said instructions given at the request of defendant were clearly erroneous, as we have heretofore shown in that part of this opinion under "I." From what we have heretofore said it is equally apparent that the instruction above referred to as given at the request of plaintiff is a correct statement of the law. It has been said in some cases that the giving

of contradictory instructions is sufficient ground for a new trial. (*Aguirre* v. *Alexander,* 58 Cal. 21; *Haight* v. *Vallet,* 89 Cal. 245, [23 Am. St. Rep. 465, 26 Pac. 897] ; *Sappenfield* v. *Main St. R. R. Co.,* 91 Cal. 48, [27 Pac. 590] ; *Lemasters* v. *Southern Pac. Co.,* 131 Cal. 105, [63 Pac. 128] ; *Rathburn* v. *White,* 157 Cal. 248, [107 Pac. 309] ; *Watts* v. *Murphy,* 9 Cal. App. 564, [99 Pac. 1104] ; *Ryan* v. *Oakland Gas L. & H. Co.,* 10 Cal. App. 484, [102 Pac. 558].)

In most if not in all of said cases the erroneous instruction was favorable to and given at the request of the prevailing party, and the reason of the rule applied in such cases was that it was impossible to tell which instruction the jury followed.

But in the case at bar it is perfectly plain that the jury did not follow the erroneous instruction, but completely ignored it, and gave a verdict which can be justified only under the instruction which we have determined states the correct rule applicable to this case. Indeed such is the burden of appellant's complaint as set forth under the first point discussed in his brief.

It is plain, we think, that the rule now invoked as to the giving of contradictory instructions has no application to such a case. Where it is plain that the jury disregarded and ignored erroneous instructions given at appellant's request no just ground for a new trial exists. Such a case is within the sound and enlightened principle adopted by the supreme court of this state in *O'Neill* v. *Thomas Day Co.,* 152 Cal. 357, [14 Ann. Cas. 970, 92 Pac. 856].

One other instance of contradictory instructions is claimed. At the request of appellant the court charged the jury as follows: "If you find that Applegarth was guilty of negligence, it does not necessarily follow that this negligence should be imputed to Walker. It can only be imputed to him if Applegarth was acting within the scope of his authority."

At the request of plaintiff the court instructed the jury as follows: "I charge you therefore, that if the said Applegarth was guilty of negligence in the operation of said elevator, or in the manner in which said elevator was operated, that such negligence on the part of Appelgarth was, in law, the negligence of defendant."

22 Cal. App.—20

Here again, inasmuch as the jury found for plaintiff they necessarily followed the charge last above quoted. From what we have heretofore said in this opinion it is manifest that we are of the opinion that such charge under the undisputed facts in this case was and is correct. It was proved without dispute that Applegarth was placed in charge of the elevator by the general superintendent of defendant, to operate it for the benefit and convenience of defendant, when, as such superintendent knew, workmen of the elevator company would be at work in the shaft completing the attachments to such elevator. Applegarth was employed by defendant to operate the elevator. As we have heretofore shown, defendant was bound to exercise ordinary care to avoid injuring plaintiff while he was at work in the shaft. Manifestly it was also the duty of Applegarth as such employee of defendant to avoid injuring plaintiff by any negligence in the operation of such elevator. As we have heretofore shown, the promise that Applegarth gave to plaintiff to give a warning was within the exact line of his duty as such operator and employee of defendant. Any negligence in operating such elevator, including the omission to give plaintiff the agreed warning, was, we think, as matter of law, the negligence of defendant; and the instruction given at the request of plaintiff and with which the verdict of the jury clearly accords was correct.

Under the undisputed facts no question could or did arise as to whether or not Applegarth was acting within the scope of his employment in operating the elevator at the time of the injury to plaintiff. For the reason above stated we think no ground exists for ordering a new trial because of any conflict in the instructions.

### V.

What we have said upon the question of the contradictory instructions also disposes of the contention that the above instructions given at the request of the plaintiff were erroneous.

Complaint is made of the refusal of the court to give two instructions requested by defendant; but what we have heretofore said fully disposes of the questions presented by such refusal.

It is plain from what we have said in the opinion relating to the promise by Applegarth to give warning to plaintiff

before moving the elevator car that the court did not err in allowing such matter to be proved over the objection of defendant.

We have thus disposed of all questions presented.

The judgment and order are affirmed.

Lennon, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 9, 1913.

Beatty, C. J. dissented from the order denying a rehearing in the supreme court, and filed the following opinion on August 11, 1913:

BEATTY, C. J.—I dissent from the order denying a rehearing. Aside from the more technical objections to the variance between the allegations of the complaint and facts necessary to support the verdict, it appears to me that there was serious error prejudicial to the defendant in the allowance by the court of the following instruction requested by the plaintiff:

"8. It is admitted in the pleadings in this case that on the 23d day of July, 1909, at the time of the happening of the accident to plaintiff, the defendant, P. J. Walker, was engaged in operating the elevator which came in contact with said plaintiff on said date. During the trial it was conceded that Applegarth, the person by whom this elevator was operated, was in the employ of the defendant, P. J. Walker.

"9. I charge you, therefore, that if the said Applegarth was guilty of negligence in the operation of said elevator, or in the manner in which said elevator was operated, that such negligence on the part of Applegarth was, in law, the negligence of the defendant, P. J. Walker."

"The court thereupon, at the request of the defendant instructed the jury as follows: . . .

"3. If you find that Applegarth was guilty of negligence it does not necessarily follow that this negligence should be imputed to Walker. It can only be imputed to him if Applegarth was acting within the scope of his authority."

The conflict between these two instructions is evident, and that the latter was correct and the former erroneous follows from the fact that upon the question whether Walker had ever undertaken by himself or his superintendent to provide for the safety of the employees of the elevator company in doing their work about the elevators, or that he had any notice that they would be exposed to any danger in completing such work, there was a serious conflict in the testimony. If the only notice given was that which plaintiff testifies to giving Applegarth (as to which there is also a conflict of evidence) then Applegarth in promising to warn plaintiff was not acting "within the scope of his authority," and his negligence could not be imputed to Walker. But if the jury obeyed the first instruction that was a question they could not consider, and the defendant was necessarily prejudiced by that error.