# HALL, HEADINGTON & CO. *vs.* EDWIN L. POOLE.

*Negligence—Master Not Liable for Injury Caused by Servant Acting*
*Outside of Scope of His Authority.*

Defendants, finding that the electric bell in their elevator was out of
order, asked a firm of electricians to have the same repaired.   Plaintiff
was sent by the firm to do the work, and after an examination deter-
mined that it was necessary to repair a battery which was in the cellar
of defendants' building under the elevator.   Plaintiff told the boy who
was operating the elevator not to bring it down below the first floor
until notified that the repairs were made, and the boy agreed not to do
so.   While plaintiff was at work in the cellar the elevator descended
and struck him, causing the injury, to recover damages for which this
action was brought.   The boy was employed by the defendants solely
for the purpose of running the elevator and the defendants had no
knowledge of the presence of the plaintiff in the cellar or of his agree-
ment with the elevator boy.   *Held*, that the boy operating the elevator
was not authorized under the terms of his employment to permit plain-
tiff to occupy the dangerous position under the elevator while it was
still being run; that the defendants, not knowing of plaintiff's position,
are not liable for the boy's negligent act in lowering the elevator below
the first floor while plaintiff was at work in the cellar, and that since
there is no conflict of evidence as to the scope of the boy's employ-
ment, the jury should have been instructed that there is no legally suf-
ficient evidence to entitle the plaintiff to recover.

Appeal from the Superior Court of Baltimore City (DOBLER,
J.), where there was a verdict for the plaintiff for $1,000.

The cause was argued before McSHERRY, C. J., FOWLER,
BOYD, and SCHMUCKER, JJ.

*Carroll T. Bond* (with whom were *Wm. L. Marbury* and
*Geo. Weems Williams* on the brief), for the appellants.

*Wm. J. O'Brien, Jr.*, and *Tatlow Jackson*, for the appellees.

FOWLER, J., delivered the opinion of the Court.
Edwin L. Poole, the plaintiff below, sued Hall, Headington

& Company in the Superior Court of Baltimore City to re-
cover damages for injuries sustained by him while repairing
the electrical appliances used in connection with the signal
bell in their elevator.

The plaintiff recovered a judgment and the defendants have
appealed.

During the trial several exceptions were taken to the ad-
mission of testimony, and at the conclusion of the evidence
the plaintiff offered eight and the defendant fourteen prayers.

A statement of facts will be necessary to present the one
question which we think controls the case.

The defendants having learned that the bell in their elevator
was out of order, sent a message to the firm of J. Frank
Eline & Company, who were engaged in the business of gen-
eral electrical installation and repairs, to send some one to
repair the bells. In compliance with the request the plaintiff
was sent by Eline & Co. He had been in their employ for a
number of years and was paid by them for the work he did.
It appears from his testimony that he was sent to make the
repairs for the defendants, and for that purpose entered the
building occupied by them, and went directly to the elevator.
When he arrived there he proceeded to make the necessary
investigation to ascertain where the trouble was located.
Having examined the wires, he concluded that it would be
necessary also to examine the batteries which were placed in
the cellar. He says: " I told him (the elevator boy) to carry
me to the cellar, which he did, and I got out and I told him,
you go up; I am going underneath the elevator to do some
repair work, but don't you come down until I call you. And
I went underneath the elevator and renewed the batteries.
* * * * After renewing the batteries I pressed the but-
ton and I could hear the bell ring, but not so strong as it
should. be." He concluded after the experiment that he
needed some new material to make the batteries stronger.
He therefore told the elevator boy that he would go to the
place of Eline & Co. to get what was necessary. When he
returned he entered the defendants' place of business from

Fayette street through a side door. He rang the elevator bell and the boy came down with the car and both descended in the elevator to the cellar. The plaintiff then said to the boy. " I have the stuff now to finish the work, and I got off the elevator and I told him you go up now, but mind you don't come down until I call you. I am going under to finish this work ; then he turned around to me and says, can I use the elevator as far as the first floor, I says, yes, but mind don't you come below the first floor ; don't you come below that ; and he said all right." After this conversation the plaintiff started to work on the batteries. While he was working the elevator was running to one or more of the upper floors. While the plaintiff was engaged in this work in the shaft directly under the elevator it struck him. The witness Brown, the elevator boy, testified that he was employed by the defendants to run the freight and passenger elevator in the rear of the building. This is the only testimony in reference to the duties he was charged with. He further testified as follows : " I took him (the plaintiff) to the basement and he looked at the batteries, and I told him there I had some work to do, and he told me not to come down below the first floor until he notified me, and I made a trip or two and did not go down stairs until he notified me. He came up on the first floor and told me that he was going out to get some material for the batteries and he said he would notify me when he came back ; to run the elevator all the way down to the cellar ; I made three trips while he was out. * * The next call I had was on the top floor, and came down on the elevator and that is the first information I had that Mr. Poole (the plaintiff) had returned when I heard him holler." " I had no notice he had returned to the building at all." It appears by the uncontradicted evidence in the case that the plaintiff made with the elevator boy alone the arrangement to use the bottom of the shaft as a place to work. The defendants had no notice of it.

The defendants' case rests upon three propositions ; first, that the plaintiff and the elevator boy were co-employees or

fellow servants of the defendants ; second, that if this be not
so, yet the elevator boy was acting outside the scope of his
employment and authority when he undertook to run the ele-
vator so as to protect the plaintiff from danger in the perilous
position in which he placed himself ; and thirdly that · the
plaintiff was the author of the arrangement by which the
accident was made possible and is himself responsible for his
misfortune.    The plaintiff contends that there is no such clear
and uncontradicted evidence of contributory negligence on his
part as would justify the Court in taking the case from the
jury; second, that if there was such proof, the defendant wa'
aware of the perilous position in which the plaintiff had place
himself ; and fourth that the doctrine of fellow servants h·
no application to the facts of this case.    But, as we have sa'
we think there is one controlling question which will rende
unnecessary to consider any other involved in this appeal,
that is whether the defendants can be legally held liable
the alleged negligent act of the elevator boy.

As we have seen, this boy was employed by the defendants
to run their elevator in carrying freight and passengers from
and to the cellar and the several floors of their building. The
evidence in regard to the scope of his employment *is uncon-
tradicted*.    If, therefore, the plaintiff without any notice what-
ever to the defendants assumed the risk of making an arrange-
ment with the elevator conductor to run the elevator in a way
different from the manner he was employed to run it, it would
seem but reasonable that they should not be held liable for
an injury resulting from his own act together with the negli-
gent act of their servant, if such act of the latter was not
authorized by them directly or indirectly.

It may well be that the defendants if they had been in-
formed of the arrangement made by the plaintiff with their
servant would have refused to sanction it.    They employed
him to run the elevator in the usual way from the top to the
bottom of the shaft, carrying passengers and freight in the
car, and while they may have considered him entirely fit for
that work, they might have refused and justly so, to allow

him to put himself in a position involving risk of accident outside the regular course of his work. It appears from the evidence of several witnesses on the part of defendant that it was not at all necessary for the plaintiff to stand in the shaft directly under the elevator to repair the batteries, although this is denied by the plaintiff. But in spite of this conflict of testimony, it is clear from the evidence that in the judgment of the employee of the defendants, they were of opinion that there was, ample room for the plaintiff to do the work without placing himself in what must be conceded to be a very hazardous position. Hence in order to avoid danger, if they had been consulted in regard to the plaintiff going into the shaft, the defendants could have insisted upon the work being done in the safer way. But in addition to this it seems too clear for discussion that if it be conceded, as it must be in this case, for the evidence is uncontradicted, that the elevator boy was employed to run the elevator and carry freight and passengers, it was not within the scope of his employment to allow the plaintiff to use the shaft for a purpose for which it was not constructed. It certainly was no more within the scope of his authority to permit the plaintiff to use the shaft for repairing the batteries than it would have been to permit him to use the car as a scaffold to repair the shaft. As was said in the case of *Hasty* v. *Sears*, 157 Mass. 125, " The plaintiff must have known that there was danger that the elevator boy would be careless and forget his orders not to lower the car below the second story, and that while he was himself at work in the well below he would be liable to injury from such negligence." So that he was guilty of the double folly of contributory negligence and of trusting his life to the care of the elevator conductor. In the case of *Jossaers* v. *Walker*, 14 Appellate Div. Rep. 305, it was held that " a servant who is running an elevator in a hotel is not acting within the scope of his employment in permitting the workman of an independent contractor who is working in the elevator shaft, to stand upon the top of the elevator in order to use it as a species of scaffold, and that the proprietor of the hotel (who was the

defendant) was not liable to such workman because of injuries sustained by him by reason of the failure of the elevator con-ductor, under such circumstances, to notify the workman that he was about to start the elevator." In disposing of the case the Court said " There was, in fact, no proof that the defend-ant ever assented * * to that use. The question then is, was that use within the scope of Paxter's authority? We think not. Paxter was the defendant's servant to operate the elevator for the service of the hotel and its guests. Whatever was necessary or proper for that service was within his author-ity. But there his authority ceased. It was limited to the appropriate use. He was not authorized to depart from his defined function, nor to operate the elevator in a direction for-eign to its proper purpose." In the case just cited as in the case at bar, the plaintiff made the arrangement with the elevator conductor, and the accident happened because the former neglected or forgot to comply with his promise. But the Court held that the negligence was to be attributed solely to the servant and not to the master. And so in the case of *Morris* v. *Brown*, 111 N. Y. 318, where the defendants were making a tunnel in pursuance of a contract with the Commis-sioners of New York City, by which they agreed to furnish " all facilities for the purpose of inspection." The City En- · gineer used the dump cars operated by defendants' servants for going into and out of the tunnel and was thrown from the car and killed; it was held " that defendants' servants were acting outside the scope of their employment, that the engineer took the risk upon himself and that the defendants owed him no duty in regard to his arrangement for transportation." There are many other authorities that might be cited upon this ques-tion, but we are of opinion that without regard to authority and looking to the facts in proof as to the terms of the em-ploymeut of the elevator boy, he was not authorized to bind the defendants in the manner here attempted, nor are they re-sponsible for his alleged negligence under the facts of this case.

By their first prayer the defendants asked the Court to in-

struct the jury that there was no legally sufficient evidence in the case to entitle the plaintiff to recover. If there had been any conflict of testimony as to the scope of the elevator boy's employment, the question whether his alleged negligent act was beyond the scope of his employment would have been a question of fact to be determined by the jury. But, as we have seen, there is here no such conflict. In the case of *Yates* v. *McCulloh Iron Co.*, 69 Md. 382, this Court said that " whether under a given state of facts a party is a fellow servant * * * * is undoubtedly a question of law to be decided by the Court." And for the same reason the Court and not the jury is the proper tribunal in this case to decide whether the servant was acting by authority of the defendants.

It follows from what we have already said that in our opinion the alleged negligent acts of the elevator boy are not within the scope of his employment, and that the defendants' first prayer taking the case from the jury should have been granted. If this view be correct it is not necessary to consider whether the doctrine of fellow servants had any application to this case, nor any of the other questions so ably presented for our consideration.

The judgment appealed from must be reversed without a new trial.

*Judgment reversed without a new trial.*

(Decided December 5th, 1901.)