FARMER'S & MECHANIC'S NATIONAL BANK v. W. T. HANKS ET AL.

Decided April 13, 1910.

**1.—Contract—Indemnity—Injury by Negligence.**

A contractor undertaking the repair and reconstruction of a building which continued to be occupied and used meanwhile by the proprietor and his tenants agreed to "be wholly responsible for damage suits arising out of or in connection with the work, both on account of parties being injured on the work, damages to adjoining property, tenants, or otherwise." An employee of the contractor engaged in plastering the elevator shaft was struck and killed by the descending elevator through the negligence of the servant of the proprietor of the building operating it, who failed to give the plasterer warning of the movement of the elevator as he had promised. Held that the proprietor sued for causing such death by his servant's negligence could not recover over against the contractor, on such agreement, the damages adjudged. The damages did not arise out of the contractor's work, but out of negligence in the operation by the proprietor of his elevator, and were not covered by the contractor's agreement with him.

**2.—Negligence—Operation of Elevator.**

Evidence considered and held to support a finding of negligence on the part of the proprietor of a building in the operation of an elevator by his employee.

**3.—Same—Person in Dangerous Position—Duty to Give Warning—Authority of Servant.**

The employe of a contractor being engaged in work inside an elevator shaft, it was the duty of the proprietor of the building, continuing the operation of the elevator while he was so engaged, to give him warning of its movement enabling him to escape from danger, and the proprietor's servant to whom the operation of the elevator was solely committed had implied authority to promise to the person exposed to danger the giving of such warning. Whatever was proper or necessary for the performance of the legal duty owing to such person by the proprietor in the operation of his elevator was within the scope of the authority of his representative to whom such operation was committed.

**4.—Contributory Negligence—Reliance on Promised Warning.**

Evidence considered and held not conclusive of the contributory negligence of one undertaking to do work (plastering) inside an elevator shaft while the operation of the elevator therein was continued, he having been promised warning of the movement of the elevator on which he had a right to rely and which was not given.

**5.—Death—Negligence of Servant—Carrier—Elevator.**

A passenger elevator in an office building is a "vehicle for the conveyance of passengers" within the meaning of subd. 1, art. 3017, Rev. Stats., and the proprietor is liable for death caused by the negligence of his servants or agents in operating it. (Reversed upon this point by the Supreme Court on writ of error.)

**6.—Dangerous Position—Duty to Warn.**

It being the duty of one operating an elevator with knowledge of the dangerous position of a workman engaged in repairs to the inside of the ele-

vator shaft to give him warning of movements of the elevator threatening injury to him, it was proper to submit the failure of the person to whom the operation of the elevator was committed to give such warning as a ground for a finding of the fact of negligence, irrespective of any agreement with the person exposed to danger to give him such warning.

### 7.—Charge—Repeating Instructions.

There is no error in refusing requested instructions which are substantially embraced in the charge given.

Appeal from the District Court of Tarrant County. Tried below before Hon. R. H. Buck.

*Lassiter & Harrison* and *Harris & Harris,* for appellant.—The evidence fails to show negligence by defendant. Aetna Ins. Co. v. Eastman, 72 S. W., 430; Railway Co. v. Bolster, 51 S. W., 42; Railway Co. v. Wiley, 118 S. W., 1127.

The elevator boy had no authority to bind his employer by a promise to give warning. Railway Co. v. Anderson, 82 Texas, 518; Railway Co. v. Smith, 84 S. W., 853; Railway Co. v. Jackson & Edwards, 89 S. W., 969; Railway Co. v. Black, 27 S. W., 120; Jossaers v. Walker, 1 Am. Neg. Rep., 663; Mann v. O'Sullivan, 6 Am. Neg. Rep., 417.

Deceased was guilty of contributory negligence. Railway Co. v. Wylie, 118 S. W., 1127; Railway Co. v. Boyd, 105 S. W., 520; Railway Co. v. Kauffman, 101 S. W., 819; Burns v. Lumber Co., 87 S. W., 164; Railway Co. v. Robinson, 84 S. W., 412; Railway Co. v. Powell, 84 S. W., 674 and authorities cited; Dallas v. Railway Co., 76 S. W., 222; Railway Co. v. Miller, 70 S. W., 25; Rodrigues v. Railway Co., 64 S. W., 1005; Railway Co. v. Huber, 54 S. W., 1074.

Under the undisputed evidence, the negligence, if any, in this case was that a servant of the defendant, as distinguished from that of the defendant itself. There is no right of recovery against the defendant for a death resulting in that way, and the plaintiffs are not entitled to recover in this case. Halbert v. Texas Tie Co., 107 S. W., 592; Ott v. Johnson, 101 S. W., 534; Asher v. Cable, 1 C. C. A., 703; Griffin v. Mannese, 166 N. Y., 166; Burgess v. Sowe, 96 N. W., 99; Seaver v. Bradley, 69 N. E., 795.

*Capps, Cantey, Hanger & Short,* for appellee Bardon.—The action of the court was proper because there were neither allegations nor proof other than that the injury was caused by the neglignece of the defendant bank, in a matter not connected with the work of defendant Bardon nor by reason of the negligence of defendant Bardon or of anyone concerned in the work of repairing the bank building, but did occur in the matter of the operation of the bank building as an office building, and by reason of the negligence of the defendant bank. G. A. Duerler Mfg. Co. v. Dullnig, 83 S. W., 889; Dullnig v. Duerler Mfg. Co., 87 S. W., 332; Barnes v. Met. Street Ry. Co., 95 S. W., 971; Frey v. The Fort Worth & R. G. Ry. Co., 86 Texas, 465; Stewart v. Gordon, 65 Texas, 347.

Such contract would be void and of no binding force upon the

party sought to be held, for the reason that where one is guilty of negligence he can not avoid its consequences by a contract fixing it upon one not a party to such negligent act nor receiving any consideration for assuming responsibility for the particular act, and the contract was void and unenforceable because in this respect there was a want of mutuality. Tyler Ice Co. v. Coupland & Norman, 99 S. W., 133; Gulf, C. & S. F. Ry. Co. v. McGown, 65 Texas, 647; Southern Express Co. v. Hill, 98 S. W., 371; St. Louis & S. F. Ry. Co. v. Pearce, 101 S. W., 760; Jones v. Gammel-Statesman Publishing Co., 91 S. W., 191; National Oil & Pipe Line Co. v. Teele, 95 Texas, 586; Roberts v. McFadden, 74 S. W. 105.

By the terms of the language used in the specifications, the defendant Bardon would not be liable under any of the facts or all of the facts of this case to the bank. Leslie v. Bell, 84 S. W., 491; Allen-West Com. Co. v. Peoples Bank, 84 S. W., 1041.

*B. D. Shropshire* and *McLean & Carlock,* for appellees W. T. Hanks et al.—The jury, under the facts of the case, were justified in finding that Page, in the operation of said elevator under said circumstances, was authorized impliedly, if not expressly, to agree with Hanks that during the running of the elevator while the said Hanks was doing the said work in the elevator shaft the said Page would give him warning of the approach of said elevator. Burnett v. Oechsner, 92 Texas, 589; Railway Co. v. Zantzinger, 93 Texas, 66; Railway Co. v. Cooper, 88 Texas, 607; Railway Co. v. Anderson, 82 Texas, 518; 136 Fed. 566.

In view of the promise of warning given to him by the elevator man, it became a question for the determination of the jury whether or not the deceased Hanks was guilty of negligence, which proximately contributed to produce his death. Waggoner v. Porterfield, 118 S. W., 1096; Railway Co. v. Mathis, 101 Texas, 351; Railway Co. v. Day, 118 S. W., 744; Railway Co. v. Keffe, 37 Texas Civ. App., 588; Railway Co. v. Vestal 86 S. W., 790; Dupree, Receiver, v. Tamborilla, 27 Texas Civ. App., 607; Industrial Lumber Co. v. Bivens, 105 S. W., 831; Smith v. Oil Co., 41 Texas Civ. App., 267; Railway Co. v. Gasscamp, 69 Texas, 545; Railway Co. v. Groves, 44 Texas Civ. App., 63; Richardson v. Railway Co., 123 S. W., 26; Railway Co. v. Hamby, 123 S. W., 731. To authorize the court to take the question of negligence or contributory negligence from the jury, the evidence must be of so conclusive a character that there is no room for ordinary minds to differ as to the conclusion to be drawn from it. Railway v. Boyd, 101 Texas, 411; Wallace v. Oil Co., 91 Texas, 19; Lee v. Railway Co., 89 Texas, 588. As bearing on the question of contributory negligence we desire to call the court's special attention to the following cases very much in point: Harmer v. Reed Apartment Co. (N. J.), 53 Atl., 402. (This case is almost on all fours with the case at bar); Anderson v. Northern Mill Co. (Minn.), 44 N. W., 315; Western Electric Co. v. Hanselmann, 136 Fed., 564.

An elevator car in an office building such as is shown by the evidence in this case, habitually used for the transportation of passengers, comes within the meaning of the term "other vehicle for the convey-

ance of goods or passengers" in the first section of article 3017 of the Revised Statutes, and where it is shown that death has resulted to a human being by reason of the negligence of the agent of the owner of the said elevator car, damages are recoverable under the said statute. Sayles Statutes, art. 3017; Kirby, Receiver, v. Owens, 120 S. W., 936; Cunningham v. Neal, 107 S. W., 539; 1 Thompson on Negligence, sec. 1078; Mitchell v. Marker 62 Fed., 139; s. c. 25 L. R. A., 33; Treadwell v. Whittier, 80 Calif., 574; s. c. 5 L. R. A., 498; Goodsell v. Taylor, 4 L. R. A. 673; Southern Bldg. Asso. v. Lawson, 37 S. W., 87; Kentucky Hotel Co. v. Camp, 30 S. W., 1011; Ray on Negligence, 308.

LEVY, ASSOCIATE JUSTICE.—Between 10 and 11 o'clock of the morning of October 15, 1906, while S. B. Hanks, aged about 22 years and son of appellees Hanks, was engaged in the work of plastering 'in the elevator shaft, he was killed by the descending elevator car being operated by appellant's employe in charge and control thereof. The appellant was the owner of a six-story office building in the City of Fort Worth, known as the "Hoxie Building," and tenanted by a great many different people. Appellant constructed and owned and operated a passenger elevator therein to carry persons vertically from one story in the building to another, which was used for the transportation of passengers generally. All persons having business had the right and did commonly use the same. The building is one of the most public places in the city, and the elevator was used by hundreds of people daily. It was proved that it was advantageous to the owners of the building in renting the building, as it would not be possible to rent the upper stories advantageously without the use of an elevator. The elevator car was about 6 x 6 feet square and between 10 and 12 feet high, and accomodated several people, and weighed about a ton. The elevator car is run by electricity, and works inside a shaft about 6 x 6 feet square extending from the lower floor of the building upward to the top floor of the building. The movement of the elevator car is controlled by means of a handle that comes out of the top of the controller box; and by turning it one way the car ascends, and by turning it another way the car descends. For the purpose of running the car the appellant placed Willie Page in charge and control thereof, and he was charged with the duties of running and operating the elevator car and had sole charge and control for such purposes from seven o'clock in the morning until seven o'clock in the evening except during the noon hour of the day, when the elevator was under the control of the electrician of the building. No other person but Page ran and operated the car during the day except at the noon hour. Appellant had entered into a written contract with John Bardon to make certain repairs on the building, and he had a sub-contract with Kuhlman covering the plastering to be done. A part of the plastering in the elevator shaft had fallen out, and Kuhlman employed deceased to replaster the place where it had fallen out, and at the time of the injury in suit deceased was at the work of replastering in the shaft. In order to do this work it was necessary for deceased to lean his body over inside the elevator shaft, and this would place

him in the path and way of the elevator car if descending.    The place where the work was to be done was about a foot below the line of the floor, and the work could have been finished in about fifteen minutes by stopping the running of the elevator so as to be uninterrupted.    The elevator car was not stopped from running, but continued to be operated at and during the time the work was being done by deceased.    The appellant's servant in charge of the elevator and operating same testified that he knew that deceased was working in the shaft on the second floor, and "before going to work there that day Mr. Hanks either asked me to or I told him that I would—I can not say which—but I agreed to call out to him as I went up and came down.    I can not state whether he asked me to or whether I told him I would.    The purpose of my calling out to him was to let him know that I was near him in time to give him time to get out of the way.    I just called out to him to let him know that I was coming."    Hanks, the deceased, in doing the work of plastering was lying on his stomach, and had to reach over with one arm down in the shaft, and that threw his head and part of his shoulders inside the shaft.    The employee operating the elevator testified: "After I made this arrangement with Mr. Hanks, by which I was to call out to him, I think I passed him about twelve times carrying passengers up and down, and on each of these occasions I called out to him in plenty of time for him to get out of the way.    I knew he was working in there and that if I did not give him the signal and notify him he was liable to be hurt."    He further testifies:  "I am not sure where I had started from just before the accident occurred, but I think I left the top floor and came down without a stop.    When I left the top floor I had some passengers in the car, four if I am not mistaken.    I did not give to Mr. Hanks any notification that I was coming down on the last trip that I made.    I knew at the time that he was at work underneath the car.    I don't know how it was that I came not to notify him."    He testified positively both on direct and cross-examination that before descending with the elevator just before the injury to deceased, he gave no warning to deceased that he was about to descend with the elevator.    That no warning was given by the operator of the elevator before deceased was struck is testified to by two of the passengers in the elevator at the time.    The speed of the elevator is shown to be 325 feet a minute, and "it was running fast when it struck Mr. Hanks."    The elevator car struck deceased while it was descending, and caught his body between the floor of the building and the floor of the car, killing him.

By the petition appellees claim that appellant desired to operate the elevator while the work of plastering was progressing, and Page, the operator, clothed with authority of appellant to do whatever was necessary in the operation of the elevator car, agreed and promised deceased that while he was performing the work of plastering the elevator shaft warning would be given deceased by Page before starting the elevator car either up or down the shaft, so as to give deceased an opportunity to withdraw from danger, and also to handle the elevator at a slow rate of speed and keep the same under perfect control so as to avoid injury to him while he was engaged in the

work of plastering, and that this employe negligently failed to give him this warning and thereby caused his death. The appellant answered by general denial, contributory negligence and assumed risk. It also, by cross-action against John Bardon upon contract to be responsible as an independent contract for damages for injury incident to his work, sought judgment for like amount awarded against it in favor of appellees. Bardon answered by denial, and specially a want of contractual liability. Judgment was entered in favor of appellees Hanks against appellant, and in favor of Bardon against the cross-action of appellant, in accordance with the verdict of a jury.

All the issues of fact were decided by the jury against the contention of appellant, and they are supported by the evidence. We can clude that appellant through its employe was guilty of negligence as plead, proximately causing the death of deceased, and that deceased was not guilty of contributory negligence, and that appellees are not precluded from recovery on assumed risk by deceased, and that the amount recovered is sustained by the evidence.

*After stating the case.*—By the first assignment it is contended that the court erred in peremptorily instructing a verdict for John Bardon. Appellant made Bardon a party and asked a like judgment against him that might be rendered against it, on the ground that Bardon had agreed in writing with it that he would "be wholly responsible for damage suits arising out of or in connection with the work, both on account of parties being injured on the work, damages to adjoining property, Hoxie Building tenants, or otherwise. Bardon had contracted with appellant to reconstruct the building. The plaintiffs sued the appellant alone, and founded the action upon a tort committed by the appellant. To the pleading of appellant Bardon and the appellees interposed demurrer claiming that the two suits were multifarious and could not be joined. It does not appear that the court acted on the demurrer. A peremptory instruction to the jury was given. Under the facts of this case the court did not err. There was neither allegations nor proof that the injury was caused by the negligence of Bardon, or any of his employes concerned in the work of repairing the building, or in a manner connected with the work of Bardon in repairing the building. The injury was alleged and proved to be caused by the negligence of the appellant through its own servant in the matter of the operation of the building as an office building, and not otherwise. It was wholly due to the negligent operation of the elevator that the death was caused. Bardon had nothing to do with the operation of the elevator and its operation had no connection with his work of repairing the building. The contract in terms was to be liable for injury "arising out of or in connection with the work" of repairing the building. Giving the contract clause full force and effect, it could not reasonably be construed, we think, as being the intention of the contracting parties that Bardon was to assume responsibility for the particular act of injury resulting wholly from the negligence of the appellant in the operation of its elevator, and with which operation Bardon had nothing to do, and the operation having no connection with the work of Bardon of repairing or reconstructing the building. To rule other-

wise would, in the facts, make the contractor an insurer against the negligence of the appellant. And this we do not think the contractor undertook to do. There was no consideration, in the facts, for such responsibility, even if the contract by its terms did actually make the contractor assume liability for the particular injury in suit, which we do not think it did.

By the second assignment it is contended that the court erred in not granting a new trial, because the evidence fails to show that the negligence of the appellant caused the injury. The evidence fully warranted, we think, the finding of the jury of negligence on the part of appellant in the operation of the elevator by its employe Page at the time of the injnry, causing the death of Hanks.

By the third assignment it is contended that the verdict of the jury is contrary to the law and evidence, because the evidence fails to show that the employe operating the elevator, on whose alleged negligence the suit is predicated, had authority to bind the appellant by his agreement to give the deceased notice or warning before the elevator descended. The question of Page's authority to make the agreement with deceased was submitted to the jury in a charge not complained of, both with respect to express and his implied authority. The point presented is that there was no evidence to warrant the jury in finding authority on the part of Page to make this agreement. The evidence showed that Page had been employed by appellant as elevator man some two or three months before the injury, and that he was entrusted by appellant with the charge and control and operation of the same from seven o'clock in the morning to seven o'clock in the evening except during the noon hour, when it was in charge of the electrician of the building. Page was in sole charge and control of the operation of the elevator. Owens, the manager of the building, and Page, operating the elevator, each knew, they admit, that deceased was sent there to do the work. Notwithstanding the repairs going on in the building, the elevator was continued to be run by appellant to promote the convenience of its tenants. The manager of the building says he knew deceased was there to do the work in the shaft, but he did not tell the elevator man to stop the elevator, nor give him any instructions about its operation while deceased was doing his work there. The work of deceased was on the second floor and in the shaft, and about a foot below the line of the floor of the building. To do the work deceased had to lean inward into the shaft and reach downward. He was lying on his stomach to reach the work. The car in operation descended with rapidity and weighed about a ton. Page knew the position of deceased, and the danger to him from the descending car. Under this state of facts it was manifestly the legal duty of Page as the representative of appellant in charge and control of the elevator car, knowing that deceased was employed in a dangerous position underneath the car, not to start same in his direction without giving him warning of its approach. Deceased was in a position of imminent danger known to the elevator man at the time. If in the circumstances it was the legal duty of appellant to give warning to deceased of the coming danger to him,

and it was negligence to omit to give some cautionary signal of the approaching car, then the agreement of Page that he would give a cautionary warning before starting the car downward to deceased was simply an agreement that he, for appellant, would perform a plain duty owing to deceased in the facts of the case. Being entrusted by appellant with the sole charge and control of the operation of the elevator car, Page had such authority as was necessary for the performance of his duties that were in furtherance of appellant's business and for the accomplishment of the object for which he was employed. Whatever was proper or necessary to the performance of the legal duty owing by appellant to deceased in the operation of its elevator car was within the scope of Page's authority as its representative, and the jury were authorized, in the facts, to so find that Page in agreeing to give a warning of the movement of the car was acting within his authority to operate the car, and to its proper purpose. He was not forbidden to run it on the occasion in suit. He was entrusted with the sole management and control of its operation. Burnett v. Oechsner, 92 Texas, 588, 71 Am. St. 880, 50 S. W., 562; Galveston, H. & S. A. Ry. Co. v. Zantzinger, 93 Texas, 64, 47 L. R. A., 282, 77 Am. St., 829, 53 S. W., 379.

By the fourth assignment it is contended that the evidence shows that deceased himself was guilty of contributory negligence. We do not think it could be held, as a matter of law, that deceased was guilty of contributory negligence under all the facts and circumstances of the case; and the evidence fuly supports the finding of the jury. See, Anderson v. Northern Mill Co., 42 Minn., 424, 44 N. W., 315; Harmer v. Reed Apartment Co., 68 N. J. L., 53 Atl., 402. The obvious danger to deceased was the descending elevator car, and he had been given to understand by the elevator man in charge and control thereof that this obvious danger, which he must avoid, would only come into existence after he had been notified. The jury were warranted in determining that deceased, engrossed as he was in his work, was not guilty of negligence in wholly relying upon the warning of the approach of the coming danger of the car.

By the fifth assignment it is contended that under the evidence the negligence in the case was that of a servant of the appellant, as distinguished from that of the appellant himself, and there is no right of recovery, under the law, against the appellant for a death resulting in that way. We think an elevator car in an office building such as is shown by the evidence in this case, habitually used for the transportation of passengers, comes within the meaning of the clause "other vehicle for the conveyance of goods or passengers" in subdivision 1 of article 3017, Rev. Stats. The reasons underlying the giving of damages as against a railroad, steamboat, and stage-coach apply with equal force, we think, without doubt, to the owner of an elevator car operated for the use of the general public and for purposes of advantage or gain to the owners, as in the instant case. It is certainly in the evidence a vehicle adapted to and commonly used for the purpose and as a means of transporting passengers. Obviously it was the intent of the Legislature to include within the Act any means used for transporting passengers, when it used the term "or

other vehicle for the conveyance of goods or passengers." This language clearly indicates, we think, that the vehicle intended was one partaking of the nature of a public conveyance as distinguished from such vehicles used simply for private purposes. The elevator in this case was a vehicle used as a means of a public conveyance for passengers, as distinguished from a vehicle used simply for private purposes, and that fact of use and purpose brings it within the terms and meaning of the statute. Being a vehicle used as a means for transporting passengers, and not used purely for private purposes, the owner, we think, would by the statute be liable for a wrongful death caused by his servant. The owner of an elevator owes to a passenger, it has been ruled, that high degree of care generally owing by a common carrier of passengers. 1 Hutchinson on Carriers, sec. 100; 1 Thompson on Neg., sec. 1078; Mitchell v. Marker, 25 L. R. A., 3, s. c. 62 Fed., 139; Southern B. & L. Assn. v. Lawson, 97 Tenn., 367, 37 S. W., 87; Kentucky Hotel Co. v. Camp, 97 Ky., 424, 30 S. W., 1011. As the twelfth assignment presents the same question as here considered, it is also overruled.

The court in the sixth paragraph of the charge authorized the jury to return a verdict for appellees upon their finding that the appellant's agent in charge of the elevator just before the injury occurred knew that deceased was engaged in the work of plastering the interior of the elevator shaft, and that a person of ordinary prudence, before allowing the elevator to descend, would have notified the deceased that the elevator was about to descend. The complaint against this charge in the sixth assignment is that it makes the appellant responsible for the failure of the elevator man to notify deceased, regardless of whether or not it was within the scope of his authority and the range of his duties to give such warning. The charge complained of was based upon proper pleading, and amply justified by the evidence. The uncontradicted testimony of the elevator man was to the effect that he knew before he made the descent that deceased was at work in the elevator shaft and was in a position where he was liable to be injured if not notified. Under these circumstances it is not doubted that the legal duty devolved upon the elevator man to use ordinary care not to injure deceased, independent of any agreement regarding the matter of notifying him of the descent of the elevator. The elevator man was, under the facts, the agent of appellant to whom it had entrusted the control and operation of its elevator car.

There was no error in refusing the instruction complained of in the seventh, eighth, ninth and eleventh assignments, because sufficiently given in a direct and affirmative form in the main charge.

There was no error in refusing the special charge complained of in the tenth assignment. As far as the same was applicable it was fully covered by the main charge, and to have given the charge as worded would have deprived appellees of the right to recover under the allegations which predicated the right of recovery on the negligence of appellant's elevator man, irrespective of the question of agreement or promise to give the warning.

The thirteenth, fourteenth and fifteenth assignments complain of

the argument by counsel to the jury. We overrule the assignments as not being sufficient to justify a reversal of the case.

The judgment was ordered affirmed.

*Affirmed.*

Writ of error granted. Reversed by Supreme Court on point shown in fifth paragraph of head notes and judgment rendered for appellant. See 104, Texas.