[No. 9087.   Department Two.   April 19, 1911.]

FRANK BEATTY, *Appellant*, v. METROPOLITAN BUILDING
COMPANY, *Respondent.*[1]

MASTER AND SERVANT—INJURY TO THIRD PERSONS—ACTS WITHIN
SCOPE OF EMPLOYMENT. Where the owner of an uncompleted office
building employed an elevator boy to run an elevator for the use of
tenants while the contractors were installing other elevators and
completing the building, the elevator boy's promise to an employee
of the contractor not to run the elevator below the second story
while the workman was necessarily in the shaft is within the scope
of his employment, and does not render him the servant of the
promisee; and the owner is liable for his negligence in so doing.

Appeal from a judgment of the superior court for King
county, Tallman, J., entered May 31, 1910, upon granting a
nonsuit, dismissing an action for personal injuries.   Reversed.

*Owens & Finck* and *Reynolds, Ballinger & Hutson,* for ap-
pellant.

*Kerr & McCord,* for respondent.

CROW, J.—Action by Frank Beatty against Metropolitan
Building Company, a corporation, to recover damages for
personal injuries.   At the close of plaintiff's evidence, the
trial judge sustained defendant's motion for a nonsuit and
dismissed the action.   The plaintiff has appealed.

The evidence produced by appellant, which on a motion for
nonsuit must be accepted as true, was sufficient to show the
following facts:   The respondent owned an uncompleted
office building in the city of Seattle.   The upper floors being
completed, were rented by respondent to tenants who occupied
the same.   The building when fully completed was to be
equipped with four passenger elevators.   For this purpose
an elevator shaft, divided into four compartments, one for
each car, was provided.   One completed elevator was installed
in the south compartment, and on October 18, 1908, the date

[1]Reported in 115 Pac. 90.

of the accident, was being used for carrying passengers to and from the upper floors. An employee of respondent was in charge of and operated this particular car as the elevator boy.

In the compartment immediately north of and adjoining this south compartment, a new car was being installed, and appellant, a servant of the contractor who was completing the building, was employed to adjust an iron plate thereto. In performing this work it became necessary for appellant to enter at the first floor, the south compartment, in which the completed elevator was running, and remain there about ten or fifteen minutes. Thereupon appellant requested the elevator boy not to descend below the second floor until appellant's work had been completed, telling him it would be necessary for appellant to occupy the shaft at the first floor about ten or fifteen minutes. The elevator boy assented to this arrangement, and agreed not to descend below the second floor until notified by appellant. He then ran the car to the upper floor, leaving the door of the south compartment open on the first floor, so that appellant might gain admission. Appellant thereupon entered the south shaft and proceeded with his work. After he had been thus employed about a minute or two, the elevator, without warning, descended to the first floor, and seriously injured him. The completed car was in good order, and could be readily stopped within a distance of two or three feet, by the use of a controller or handle in charge of the operator.

Appellant contends that the elevator boy, by his negligence and while acting within the scope of his employment, inflicted the injuries of which he now complains. Respondent insists that the nonsuit was properly granted, contending (1) that, when the elevator boy, upon appellant's request, promised to operate the car to the upper floors and not to descend below the second floor, he went outside the scope of his employment in making such agreement; and (2) that in making such arrangement the appellant made the elevator boy his servant

for that particular purpose, and in so doing was guilty of contributory negligence. In support of its position, the respondent cites a number of authorities, but seems to place especial reliance upon *Jossaers v. Walker*, 43 N. Y. Supp. 891, and *Hall v. Poole*, 94 Md. 171, 50 Atl. 703. It must be conceded that these cases, to a very considerable degree, support appellant's contention. In each of them it was held that the operator of the elevator in effecting an arrangement with the plaintiff for his protection, which to some extent interfered with or changed the usual method of operation, went outside the scope of his employment, and that his employer was not liable for his subsequent act of negligence in violating his agreement and causing the injury to the plaintiff. We are not inclined to follow the reasoning of these cases. In each instance the defendant's employee was placed in charge of a dangerous appliance for the purpose of operating it for defendant's profit, and while thus engaged, negligently injured the plaintiff. In this action the promise made for appellant's protection was to temporarily refrain from operating the elevator below the second floor. The making of such promise, and the circumstances surrounding it, gave the operator actual notice that appellant was about to be in a position of danger should the car be operated below the second floor. The boy remained in charge of the car as respondent's employee, and it seems unreasonable to contend that, while thus employed and in charge of the car, it was not his duty to refrain from injuring the appellant.

There is a marked conflict of authority in cases of this character, and we feel constrained to approve and adopt the rule announced in the following cases: *Soderstrom v. Patten*, 131 Ill. App. 32; *Farmers & Mechanics' Nat. Bank v. Hanks* (Tex. Civ. App.), 128 S. W. 147; *Donovan v. Gay*, 97 Mo. 440, 11 S. W. 44. These cases are directly in point. In *Soderstrom v. Patten* the facts are almost identical. There a workman employed to repair an elevator shaft effected an arrangement with the elevator boy to move the car up in the

shaft and quietly remain there. The elevator, contrary to the agreement, was moved higher up in the building, causing a counterweight to strike and injure the workman. The employer of the elevator boy, as defendant in an action for damages, relied upon the identical cases now cited by respondent. We will quote at some length from the observations of the Illinois court, as being especially pertinent here. The court said:

"With some minor differences in the facts the authorities cited, and especially the Maryland case [*Hall v. Poole*] are sufficiently in point to control this case if we were obliged or disposed to follow them. They seem to hold that except in the mere matter of actually running the elevator with freight and passengers in it up and down the shaft from story to story, the elevator boy could be guilty of no negligence in the control or handling of it which could be imputed to his employer. We do not agree with the doctrine or reasoning of these cases. The Maryland case leans heavily on the New York Supreme Court case [*Jossaers v. Walker*] and concerning this latter we agree with Thompson in his commentaries on the Law of Negligence, 2d edition, Vol. 1, Sec. 528, that it is 'a decision seemingly untenable.' The elevator man was not an automaton, but a reasoning and intelligent being, put in control of the piece of machinery in question, and was therefore impliedly authorized to regulate its motions under extraordinary circumstances and in emergencies, as well as in the ordinary routine. There were not likely to be many of these extraordinary circumstances, it is true, but the rightful presence of a repairer at the bottom of the shaft, whose work would take a few minutes, was such a circumstance. The negligence of the elevator man did not depend on the promise nor consist in the breaking of it. His negligence was in so running the elevator that it injured a person not a trespasser whom he had reason to know would be likely to be injured by his so running it. The agreement or arrangement is proof that he had notice of the situation. We do not care to discuss the matter more fully. We are not prejudging the case or the facts nor foreclosing the defendant. But there is no doubt in our mind that the evidence offered for the plaintiff was sufficient to send the case to the jury. Nor is authority lacking for the conclusion to which reason leads

us. As inconsistent in principle with the decisions relied on by appellee and in point as supporting the appellant, we refer to *Siegel, Cooper & Co. v. Norton*, 209 Ill. 201, in our own state; to *Donovan v. Gay*, 97 Mo. 440, in Missouri, and to *Stephens v. Chausse*, 15 Canada Supreme Court Reports, in Canada. If the position of the appellee in this case were well taken, the negligence of a city bridge tender, who ran his bridge on a repairer, to the latter's injury, would not be imputed to the city. This court held that it could in *Gathman v. The City of Chicago*, 127 Ill. App. 150."

The elevator boy not only knew appellant was in the shaft, but knew that he was rightfully and necessarily there, engaged in work required in the completion of the building. Respondent, as owner, knew that the building was not entirely completed; that tenants were nevertheless occupying the upper floors; and that the one finished elevator was being operated for their convenience. It must have known that the presence of various workmen was indispensable to complete the building and install other elevators. The upper floors were leased for respondent's profit. Under these conditions, respondent employed the elevator boy to operate the only car then ready for use. Under such circumstances it would be unreasonable to hold that respondent did not anticipate its employee would be compelled to so discharge his duties as not to interfere with appellant and other workmen engaged in completing the building. The evidence indicates that appellant could only do his work by entering this particular shaft and remaining there some ten or fifteen minutes. The authority of the boy was to operate the elevator in a safe and sensible manner, and in harmony with surrounding circumstances and conditions which were known to respondent, the owner of the building, who had employed him. Unquestionably it was the duty of the elevator boy to so operate the car as not to injure any workman whose employment might rightfully require him to be temporarily placed in a position of danger. The boy's promise not to come below the second floor was not important except to show this actual

knowledge of appellant's presence in the shaft and as tending to excuse appellant from the charge of contributory negligence.

The conditions here differ from those in the Maryland case of *Hall v. Poole*, cited by respondent. There the building was a completed one, in which certain minor repairs became incidentally necessary. Here the respondent leased its upper floors to tenants for its own profit before its new building had been completed, and while much original constructive work remained to be performed. Respondent knew this necessary work would have to be done by various persons who would be rightfully in and about the building. It is only reasonable to hold that, if for its own profit respondent saw fit to operate the elevator, a dangerous contrivance, before the completion of its building, it became its duty to see that its employee did operate the car in such a manner as not to injure workmen who, in the necessary performance of their duties, might, to the knowledge of the elevator boy, be placed in positions of danger. In view of the circumstances, we are not willing to hold that the elevator boy was acting without the scope of his employment, or that he became appellant's servant, when, upon appellant's request, he promised to hold the car above the first floor until further notice. To so hold would be to announce the doctrine that the respondent could cause this dangerous appliance to be operated in the midst of workmen who were rightfully in the building, and that it could do so without liability for the negligence of its employee in running the elevator in such a manner as to injure a workman whom he knew to be rightfully and necessarily in the shaft.

The judgment is reversed, and the cause remanded for a new trial.

DUNBAR, C. J., and CHADWICK, J., concur.