## WORKMAN IN EXPOSED POSITION INJURED BY MOVEMENT OF ELEVATOR.

### Circuit Court of Cuyahoga County.

### THE CLEVELAND PROVISION CO. v. EDWIN C. HAGUE.

#### Decided, January 22, 1912.

*Contributory Negligence—Choice of Two Ways of Doing a Thing—Owner of Elevator Chargeable with Knowledge of Operator—Competency of Exhibits.*

1. The rule that where there are two ways of doing a thing, one safe and the other unsafe, he who undertakes to do the thing must choose the safe way, or choose the unsafe way at his peril, does not require that more than ordinary care shall be used in the selection.
2. When one working for an independent contractor in repairing wires about an elevator has requested the operator of the elevator to notify him each time before the elevator is moved, which he has promised to do, it is for the jury to say whether the workman was negligent in relying upon such notice being given him.
3. When the operator in charge of an elevator, whose duty it is to run the elevator for the defendant in the conduct of its business, has notice that a workman for an independent contractor making repairs near the elevator is likely to put himself in position where the operation of the elevator without warning will injure him, and that such danger will be avoided by giving him notice before the elevator is moved, the knowledge of the elevator operator is the knowledge of the defendant.
4. An exhibit is not necessarily incompetent because it fails to show some exact thing in connection with the subject under investigation provided it shows some matter directly bearing upon the matter under investigation, with an explanation of how it differs from that which is being investigated.

*Kline, Tolles & Morley,* for plaintiff in error.
*Cook, McGowan & Foote,* contra.

MARVIN, J.; WINCH, J., and NIMAN, J., concur.

The relation of the parties here is in the reverse order from what it was in the court below. The terms plaintiff and defendant used in this opinion refer to the parties as they were in the original case.

Plaintiff brought suit against the defendant, which is a corporation, claiming to recover for injuries received by him while working at the plant of the defendant in the city of Cleveland, on the 16th day of June, 1910. At that date the defendant was having the electric wires in its plant changed so that the wires should pass through a conduit, that is, that they should be covered instead of exposed. This work of covering the wires was first undertaken by the defendant itself, but later it entered into a contract with the Martien Electric Company whereby that company undertook to complete the alterations to be made in connection with this wiring system.

The plaintiff was in the employ of the Martien Electric Company, at his work, at the time of the injury. At the time of the injury his work was upon a platform some ten feet above the upper floor of this building, high up toward the ceiling. On this platform there was some moving machinery connected with the working of the plant. One of the moving parts of such machinery was a horizontal shaft so connected with the elevator as that, as the elevator platform moved up or down, this shaft revolved the one way or the other. This shaft was some little distance above the platform, but not so high but that a man could step across it without resting himself upon it; that is, it lacked some inches from being as high as the length of plaintiff's legs. When this shaft was at rest there was, of course, no danger in stepping over it; when in motion, it was dangerous to step over it, because of its proximity to the person of him who stepped over it. There were, besides this, certain pulleys and chains working over them, which would of course be dangerous for one coming in contact with them. The plaintiff was entirely familiar with the situation on this platform. The defendant also was familiar with the situation, and the defendant knew that the work required of the plaintiff, or of those doing the work for the Martien Company in arranging this conduit system for the wires, would require him to be on this platform more or less.

This platform was reached by a stepladder standing upon the floor under the platform and reaching to one of its corners.

This ladder could have been placed at some other part of the platform, that is, it was not necessary that it should be at the particular point where it was placed. On the day of the injury the plaintiff, while working upon this platform, had occasion to get some tools, to reach which it was necessary for him to go upon the floor beneath. He was at work at such point on the platform as that to reach the stepladder he must pass over the elevator shaft. The elevator was operated by an employee of the defendant, and he knew that the plaintiff was at work upon this platform. There is evidence on the part of the plaintiff tending to show that shortly before the accident he was seen upon the platform by the chief engineer of the defendant, or by its superintendent, or both.

On the part of the plaintiff it is claimed, and the evidence shows, that the plaintiff notified the elevator man that he was going onto this platform to work, and that he would be in danger if the elevator should be moved up or down without notice being given to him that the elevator was about to move, and that therefore he must be notified before the elevator should be moved either way, causing this shaft to revolve.

It should be said that the defendant, in the operation of its plant, needed the elevator to be moved at frequent intervals. Of course the suspension of all use of the elevator and of the moving machinery above this platform would have taken away all danger incident to the moving of such machinery; but this was not necessary, nor was it asked for by anybody. The danger to the plaintiff consisted in the moving of this machinery, including the shaft, at a time when the proximity of the plaintiff to such moving shaft or machinery was such that he was liable to be caught by it, and this could easily be avoided if the plaintiff could know in advance just when this machinery was to move, and so far as this shaft is concerned, to know in advance just when the shaft was to move.

The result of the suit was a verdict and judgment in favor of the plaintiff.

On the part of the defendant it is claimed that from the facts disclosed, which are substantially as hereinbefore stated,

the court should have granted a motion which was made both at the close of the plaintiff's evidence and at the close of all the evidence, that a verdict be directed for the defendant, and that the court erred in refusing to grant such a motion. One of the grounds for this claim is, that it is clear, as a matter of law, that the plaintiff contributed to his injury by his own negligence. This claim is not well founded. It is urged in support of it that if the plaintiff had placed the stepladder, or caused it to be placed, at another part of the platform, he could have reached it to go to the floor below without stepping over this shaft; that therefore there was a safe way by which he might have reached the tools which it was necessary for him to have without stepping over the elevator shaft, and the rule that where there are two ways of accomplishing a thing that needs to be done, the one a safe way and the other unsafe, he who undertakes to perform the thing must choose the safe way, or choose the unsafe at his peril. This rule does not require that one shall exercise more than ordinary care in making such selection, and this particular case would not require that the ladder must be placed at a point where it would have afforded a safe place for the plaintiff to have avoided the particular accident which came to him, provided, taking the whole situation into consideration, he placed the ladder where a man of ordinary prudence would have placed it.

It must be remembered that there was no danger in stepping over this shaft provided it should remain still during the whole time of stepping over it. It was entirely safe when the plaintiff started to step over it. He was injured because it started while he was stepping over it, because it then caught him and threw him in such wise that his foot caught so as to be crushed at one of the pulleys over which a chain moved. It was a question properly for the jury to determine whether the plaintiff exercised such care as the ordinarily prudent man would have exercised in such a circumstance, and we are not prepared to say that the jury found wrong on that question.

It is urged further that the plaintiff was negligent in not notifying the man in charge of the elevator that he was about

to step over this shaft, because, it is said, knowing as he did that if the shaft revolved while he was stepping over it, he would be placed in a dangerous position. In considering this it must be remembered that the situation was not dangerous when he attempted to step over it, provided the conditions remained until he had completed the stepping over as they were at the time he began to step over; that he had notified the elevator man to warn him when he started the shaft, because his work would be such that he was liable to be in danger when the shaft started, unless he had an opportunity to protect himself. We think it was a question fairly submitted to the jury whether it was *per se* negligence for the plaintiff to rely upon receiving the notice, and so this position is not sound.

On the part of the defense it is shown by the man in charge of the elevator himself that at all times prior to the happening of this accident, whenever the plaintiff was working upon this platform, notice was given to him before the shaft was set in motion, and it is testified to by him, the elevator man, that on this occasion he gave notice before he started the shaft. Upon this proposition the evidence is conflicting. But it is urged that whether this be true or not, that is, whether it be true or not that the plaintiff arranged with the elevator man that he should be notified whenever the elevator was to start, that it was negligence on the part of the plaintiff to trust to any such arrangement made with the elevator man, because, it is said, the latter went beyond the scope of his employment when he took upon himself to give notice to the plaintiff of when he would start the elevator. In support of this claim our attention is called to the case of *Hall, Headington & Co.* v. *Edwin L. Poole,* 50 Atlantic, 704 (94 Md., 171). This case will be discussed later in this opinion, together with others cited on this proposition, contenting ourselves here with saying that we hold that the man in charge of the elevator, whose duty it was to run the elevator for the defendant in the conduct of its business, was so far the agent of the defendant as that, he having notice of the dangerous position in which the plaintiff was likely to put himself, and having notice that such danger would be avoided

by his notifying the plaintiff when he would move the elevator and so put the shaft in motion, his knowledge of the arrangement was the knowledge of the defendant.

It is further urged on the part of the plaintiff in error that the court erred in receiving the verdict and entering judgment upon it in the absence of answers by the court, and which they failed to answer. Those questions were:

First. "Was the operation of the elevator while the plaintiff was at work upon the elevator platform, inherently dangerous to plaintiff during the entire time he was so engaged?"

To this the jury responded. "Can not answer."

Suppose the jury had answered this either way, we are unable to see that the general verdict would necessarily have been affected by that. The general verdict might well have been reached if the answer had been "Yes," and so it might well have been reached if the answer had been "No."

This applied equally to the second question, which reads:

"Was the operation of the elevator while the plaintiff was at work on the platform dangerous at intervals only?"

To this the same answer was made, but we think an answer either way would not have been inconsistent with the general verdict.

The jury responded to each of the several interrogatories in the same words, "Can not answer." The other questions are:

Third. "Was the operation of the elevator while the plaintiff was at work upon the elevator platform dangerous only when he was passing to and from the work upon said platform?"

Fourth. "Was the operation of the machinery while the plaintiff was at work upon the elevator platform dangerous only when he passed over the drum shaft in going to and from the work?"

Fifth. "Could the plaintiff have gone to and from the work upon the platform with safety to himself by means of a ladder placed against the front of the platform?"

Sixth. "Was there any safer way for the plaintiff to go to and from the work on the elevator platform than that of passing over the drum shaft?"

If what has already been said in this opinion in reference to the matter of the different means by which one may go from one place to another, and the responsibility as to taking a safer course, is sound, then an answer either way to any one of these questions would not necessarily have resulted in a different verdict, notwithstanding the proposition that in choosing between a safe and a dangerous way to do a thing, other things being equal, he who takes the dangerous way does it at his own peril; because the circumstances surrounding the taking the one way or the other must always be taken into consideration in determining whether ordinary care is used in the choice of the path taken. This seems to be a sufficient answer to the claim that the case should be reversed because of this failure to answer interrogatories. However, it may be said that no objections were taken at the time. True, counsel were not present when the verdict was returned, but it seems to be settled by the authorities that in order to avail oneself of such failure, there must have been exception taken or objection taken at the time. See *Mutual Accident Association* v. *Harrington*, 10 C.C.(N.S.), 134; *20 Enc. Pleading & Practice*, 352. However, we do not here determine that the rule applies where the party or attorney is not present.

It is further urged that the court erred in admitting certain offered evidence over the objection of the defendant.

The first of these objections is shown by the record at page 75, where this question was asked of the plaintiff by his own counsel: "Mr. Hague, was it necessary to shut the elevator down for you to do your work up there?" It is said this is asking for a conclusion, and this is true in a sense, but the admission of the answer to this question was not prejudicial to the defendant, especially when the answer to that question is taken into consideration. The answer was: "It was not." And this is equally true of another question appearing on the same page of the record: "When did it become necessary to stop the operation of the elevator?" The answer was: "Why it only became necessary when we were crossing or pulling the wires, going to and from." There was no prejudice in this.

It clearly conveyed to the jury only a proposition which was so thoroughly shown by all the evidence that the only danger to which the plaintiff was subjected by the moving of the elevator shaft was the danger that he might be caught when he was required to cross over it, if it were then in motion.

On page 83 of the record, the plaintiff offered in evidence a cut or picture of a pulley with a chain over it; before this was offered in evidence it was handed to the witness, and this question was asked of him: "I hand you a little cut showing a couple of sprocket wheels and chain, and ask you whether in a general way that represents the chain in which you were caught and the wheels around which it revolves?" To which the answer was: "It does, except it was about half the width." Q. "That is, a half that width chain would represent the chain in question here?" A. "Yes, sir; that is the shape of the gear exactly." Thereupon the cut was offered and appears in the record as "Exhibit A."

The objection is that it is not a cut of the exact wheel, but the answers to the questions put show in what the plaintiff says it differs from the exact wheel. We see no reason why this might not be a proper item of evidence as giving to the jury information from which they might well learn more than they would without such cut.

The "Exhibit B," also, which was offered in evidence was offered and admitted under objection. This was shown by the witness to represent a chain similar to the one shown in "Exhibit A," somewhat enlarged. An exhibit is not necessarily incompetent because it fails to show some exact thing in connection with the subject under investigation, provided it shows some matter directly bearing upon the matter under investigation with an explanation of how it differs from that which is being investigated. Suppose that one is injured by some mechanical device eight inches in diameter; there is offered in evidence a device which is testified to as being exactly like the one under investigation except that it is double the size of the one being investigated, but it is offered to show the workings of the device. Or, suppose a cut of some device which is being investigated is

offered, which is not of the exact size of the device itself but is larger or smaller, but shows the construction or operation of the device; or, suppose that a device under investigation is so similar to a device produced by another manufacturer as that the operation or construction of the one under investigation may be shown by the similar devices, the witness explaining that the difference is, it can not be that the exhibit must be excluded. First, a witness testifies that the device is similar, but points out in what respect it differs; then, surely, with the opportunity for cross-examination to show whether it is all similar, or if dissimilar, to what extent, the court would not be justified in refusing to admit the exhibit. We find no error in the rulings upon the admission to evidence.

But it is said that the court erred in its charge to the jury, and that it erred in refusing to charge certain propositions requested by the defendant. It should be said in reference to these requests that they were not made in such wise as to bring them under the statute as to requests made to be given before argument, nor is it claimed here that they were so requested. So that, if the charge as given was a proper charge, and if on the subjects covered by the requests the court properly charged the jury, then there was no error in refusing to give the requests in the form in which they were presented to the court. It is said that there was error in the charge first because of the following language:

"Briefly stated, the plaintiff says that he was injured through the negligent act of the defendant in failing to notify him or warn him of the starting of said elevator, and of the setting of said machinery connected therewith in motion, while knowing that plaintiff was on said platform in the performance of his duty."

And again this language:

"So that the issue directly made by the petition and the answer was as to the fact of the warning. The defendant admits the agreement to warn, and says the fact was that on this particular occasion it did warn. That is the issue as made up by the pleadings."

There is this to be said about the language of the judge here
last quoted: The defendant did not admit the agreement to
warn, but substantially it does admit that the plaintiff had noti-
fied the man in charge of the elevator that he should give him
warning when he would start the elevator. If the defendant
had knowledge, through its proper agent, that the plaintiff would
be in danger when the shaft moved, and that the plaintiff would
depend upon warning coming to him when the shaft was to be
moved, the obligation to give such warning would have been
no greater because the elevator man had promised that he
would give him warning, and so the statement by the court as
to the admission was immaterial.

It is further complained that the court erred in using this
language in its charge:

"If you find that the elevator boy was entrusted by the de-
fendant with the control and operation of the elevator for any
purpose, then under such facts the boy became the agent of the
company."

Taken in connection with the remainder of the charge, there
was no error in this. If the boy controlled the operation of
the elevator, then he was the agent of the company, in the opera-
tion of that elevator, and the "for any purpose" can only have
affected the matter of the charge when taken in connection
with the evidence as to whether the boy did have the control of
the operation of that elevator. Of course this meant, and was
understood by the jury to mean, that this boy or man, if he had
such control of the elevator, that he determined when it was to
be moved and when it was not to be moved, and what warning
was to be given, if any, to one who might be in danger by reason
of its being moved, then he was the agent of the company for
that purpose. And so we consider that charge the right one.

In this connection the following authorities should be con-
sidered:

Earlier in this opinion the case of *Hall, Headington & Co.*
v. *Poole,* 50 Atlantic, 704 (94 Md., 171), is mentioned, with the
statement that it would be discussed later. In that case the

plaintiff was in the employ of a contractor, who had to put in the electric wiring for a business plant. He found it convenient, though not necessary in the performance of his work, to get into the elevator shaft at its foot. By so doing he put himself in a position in which he was sure to be injured if the elevator should be used in the ordinary way, running clear down to the bottom of the shaft. He told the elevator boy that he was going into this place of danger; he told him not to run the elevator down below the first floor while he was there at work. And he testified that the boy said: "All right." Aside from the knowledge of this boy there was no knowledge on the part of anyone connected with the defendant that the plaintiff was in this dangerous position. What the boy undertook to do was to omit doing all that his duty required of him, namely, to stop the elevator at the first floor when coming down, whereas his duty required of him to run clear down to the foot of the shaft.

The court held that when the boy undertook to omit the performance of the duty required of him by the terms of his employment, he went beyond the scope of such employment, and could not thereby bind his principal.

The present case is easily distinguishable from that. In that case it was sought to hold the principal for a promise of his servant that he would omit the performance of a duty which his employment required of him to perform. In this case no suggestion was made that any duty should be omitted, but only that warning should be given of when he would perform one of his duties in the running of the elevator. We think it might well be that one should not be held to be acting within the scope of his employment when he assumed to omit to perform such duty, and still be within the scope of his employment when he undertook to perform the duty in a particular way, which would in nowise interfere with the performance of his full duty to his employer.

The case of *Farmers & Mechanics National Bank* v. *Hanks*, 128 S. W., 147, is very nearly akin to the present case. We quote from the syllabus:

"A passenger elevator-man who knew before descending that a workman was in the shaft in a position where he was liable to be injured, if not notified, was legally bound to use ordinary care not to injure him, independent of any agreement as to notifying him of his descent, and he was, under the circumstances, the agent of the owner of the building, and being intrusted with the control and operation of the car by such owner, was the latter's agent."

In the case of *Reatty* v. *Metropolitan Building Co.*, 115 Pacific, 90, it is held that where a workman went into an elevator shaft, telling the elevator boy not to come below a certain floor with his elevator, and the boy promised not to do so, the elevator boy was not acting outside the scope of his employment.

In this case the court considered a large number of cases on the question of the agency of the elevator man, among them the case of *Hall, Headington & Co.* v. *Poole, supra,* and reaches the conclusion as above stated, citing in support of the view taken by the court the following: *Soderstrom* v. *Patten,* 131 Ill. App., 32; *Bank* v. *Hanks, supra,* and *Donovan* v. *Gay,* 97 Mo., 440.

The requests to charge made by the defendant to be given were seventeen in number. Of these nine were given and eight refused. The first one refused is the one numbered 7 and reads:

"The duty of determining whether or not it was safe for the plaintiff to work on the platform over the elevator shaft was upon the plaintiff and not upon the defendant."

The giving of this request could not have aided the jury more than it was aided in determining the rights of the parties by the charge given.

The claim of the plaintiff is not based on the proposition that it was necessarily dangerous to work on the platform over the elevator shaft, but that it was dangerous when the machinery was in operation, and so the refusal to give this did not prejudice the defendant.

The court gave, at the request of the defendant the eighth proposition requested:

"The defendant in this case did not owe the plaintiff the duty of providing a safe place for him to work."

That was a sufficient instruction as to whose duty it was to determine whether the place was safe or not. The claim of the plaintiff was not based upon the obligation which would be due from the defendant to him if the plaintiff had been an employee of the defendant, and the court distinctly told the jury that the obligation of the defendant to the plaintiff was to exercise ordinary care for his protection.

As bearing upon whether there was any prejudice to the defendant in the refusal to give the seventh proposition requested, the ninth proposition requested, which was given, may be considered, and this reads:

"Even though you may find that it was unsafe to work upon the elevator platform while the elevator machinery was in operation, you can not on this account conclude that the defendant was guilty of negligence; neither is there any presumption to the effect, if the plaintiff was injured, that the defendant was guilty of negligence."

The eleventh, which was refused, reads:

"If you find that it was in fact unsafe for the plaintiff to work on the elevator platform while the elevator machinery was in operation, then, I charge you, that it was the duty of the plaintiff, when in the course of his work it became necessary for him to go upon said platform, to notify the defendant, and thus afford the defendant an opportunity to discontinue the operation of said car until the plaintiff had completed his work upon the platform."

Clearly this ought not to have been given. There was no claim made that the car should not be operated while the plaintiff was at work upon the platform, but only that it should not be put in motion without a warning to him.

Without stopping to read each one of these requests refused, we reach the conclusion that in view of the charge as given, there was no prejudice to the defendant in the refusal to give such as were refused. Attention has not been called specifically to each one of the errors complained of, but attention has been given to all of them, and attention in this opinion is called to those which we regard as of as large importance as any, and

on the whole record we fail to find that there was any error to the prejudice of the defendant whereby substantial justice was not done to it in this trial, and the judgment is affirmed.